[Civ. No. 11858. Third Dist. Dec. 23, 1968.]

GORDON STROMER, Plaintiff and Appellant, v. J. L. BROWNING, Defendant and Respondent.

514

Changaris, Trezza, Ithurburn & Keeley, Mark G. Steidl-mayer and James G. Changaris for Plaintiff and Appellant.

Downey, Brand, Seymour & Rohwer and Ronald N. Paul for Defendant and Respondent.

PIERCE, P. J.—Plaintiff Stromer appeals from an order (and modification thereof) denying plaintiff's motion to set aside a judgment in favor of defendant. ■ Additionally, an untimely appeal from the judgment itself is before us. Stromer now admits the notice of appeal was filed too late. That appeal must be dismissed.

On a former appeal of a plaintiff's judgment in this action this court affirmed, and thereafter the California Supreme Court took over and reversed, the trial court's judgment. That reversal was stated in the last sentence of the opinion. It expressed no directions by the court as to the future fate of the litigation. The remittitur signed by the clerk also simply ordered a reversal; nothing further. A form of judgment was thereafter prepared and presented to the trial court by the attorneys then representing Browning.[1] The preamble of the judgment form recited incorrectly: "and said remittitur having provided directions to this Court to enter judgment for the defendant, J. L. BROWNING." The form was presented ex parte. The judgment as so presented was signed by the court and entered without notice. It provided for judgment in favor of defendant Browning with costs. The judgment was entered March 6, 1967. Notice of entry of judgment was duly served on Stromer's attorneys. On March 17, 1967, a notice of motion for an order setting aside said judgment was served and filed. The motion was purportedly filed under Code of Civil Procedure section 473. It was opposed by Browning through his attorneys who also made a motion for summary judgment based upon the proposition no justiciable issues remained to be tried. Both motions were argued together. By order entered October 13, 1967, plaintiff's motion to set aside the judgment was denied.

■ Two questions are presented: (1) Was it error for the trial court to deny Stromer's motion to set aside the judgment where no showing was made by him that on a retrial of the action evidence could be presented by plaintiff not falling within the "law of the case" doctrine? (2) When the whole tenor of a decision by an appellate court gives the appearance of the court's actual intention to reverse the lower court's decision with directions will the failure by the court in the order portion (i.e., the last sentence) of the decision to spell

---

[1]The attorneys are not those representing Browning on this appeal.

out those directions necessarily bar a judgment by the trial court made in accordance with the directions obviously intended but not stated?

Our negative answer to the first question might seem to obviate necessity to answer the second. Coinciding factors, however, spring up as we ponder both problems. Clarity will, we think, be served by a discussion which covers these factors progressively rather than by treatment of the questions in isolation.

### FACTS

The decision of this court on the first appeal of this case was reported in 50 Cal.Rptr., at page 796. A hearing was granted. The Supreme Court's opinion (dated December 1966) is reported in 65 Cal.2d 421, 55 Cal.Rptr. 18, 420 P.2d 730.

It is important to note that the facts stated in both opinions are substantially identical. Those facts are:

Browning had employed Stromer as a broker to find a buyer for a ranch. A 5 percent commission was fixed. The commission would be payable only out of principal installments on the purchase price actually received. Negotiations followed with prospective purchasers, the Wilbur brothers. After there had been offers and counteroffers, a conference took place. Browning's attorney was present and took notes of the negotiations. The parties reached an agreement orally. "All agreed, however, that the parties were not to be bound until each had approved and executed the sales documents to be prepared" by Browning's attorney.

Browning was reserving acreage for a duck club. At the conference described, the boundaries of this area, the means of supplying water for the duck pond (through a pipeline) and the location of said line were agreed upon. And, since the Wilburs also planned a duck club, the correlative rights of the parties to the use of water had also been determined.

Preparation of the agreement was delayed when Browning's attorney became ill. Meanwhile, the Wilburs, with Browning's permission, went on the land. The duck season had begun. The Wilburs and Browning both commenced to fill their respective ponds. The methods applied were those contemplated by the parties. The results were not those expected by Browning. The level of his pond dropped. The Supreme Court opinion found that uncontradicted evidence had shown that Browning's duck club was of primary importance to him. When his duck pond level dropped, therefore, he caused

his attorney to make changes in the written draft of the agreement. These changes gave him virtual control over the water supply. They included a boundary change. The Wilburs refused to accept the changes and the deal was off.

The only question, under those facts, was whether the trial court's findings and holding that Stromer had earned his commission could be sustained. The Supreme Court answered that question in the negative. There was no dispute as to the facts. The trial court, this court and the Supreme Court applied the same rules: (1) Ordinarily a broker will not be entitled to a commission unless a sale is consummated where his brokerage contract so provides; but (2) as stated by the opinion of the Supreme Court (on p. 424 of 65 Cal.2d), "A prospective seller . . . owes a duty to the broker not to act arbitrarily or in bad faith to prevent consummation of the transaction. . . ." If he does so act "the broker is entitled to his commission even though his contract provides that payment shall be made out of the proceeds of the sale. . . ." Citing the same authorities this court had cited, the Supreme Court reached a conclusion opposite to that which this court had reached. (It stated (on p. 427): "[E]ven if we assume that by changing the terms orally agreed upon, defendant caused the buyers to refuse to enter into a binding contract, it would appear that his actions were nevertheless consistent with the good faith which the law requires of him." The court reasoned that "when it developed after the oral agreement was made that if the transaction were completed on the terms orally agreed upon, defendant would not have the full use of the facilities of his duck club, he was not required to consummate the transaction in order that plaintiff would not be deprived of his commission. . . . [H]is action in making the above mentioned changes . . . does not show a lack of good faith. (P. 428.)

The antepenultimate sentence of the opinion reads: "Under the circumstances. plaintiff is not entitled to recover his commission." The last sentence is "The judgment is reversed."

A rehearing was sought. The petition therefor raised only the same issue, Browning's bad faith and arbitrary action.[2]

---

[2]Plaintiff Stromer's argument on page 11 of his petition for rehearing (of which we take judicial notice) is summarized thusly: "If defendant had acted in good faith there would have been no breach of the brokerage contract. (i.e., the obligation to pay would never have arisen by virtue of the failure of a condition precedent.) The trial court is presumed to have known this law. Nevertheless, the trial court found that defendant

The facts upon which the decision had been based were not challenged. The petition was denied.

## The Order Form Was Apparently Inadvertent

There was only one theory upon which Browning could possibly have been held liable to pay Stromer under the issues and facts proved at the trial. That issue was: Did Browning arbitrarily or in bad faith change the terms of the purchase and sales contract as agreed to orally? The determination of whether a person has been guilty of arbitrariness or bad faith is a determination of intent and motive. It is tested by his words and actions. When a court is given specific words and actions, the decision which it makes is made as a matter of law. In this case the Supreme Court made a judgment that Browning had not been arbitrary; that he had not acted in bad faith. After a case fully tried, with facts not in dispute, the intent of the Supreme Court to us appears patent. It intended, as we read its opinion, that judgment in Browning's favor be entered. We can find nothing left for the trial court to retry. Except for formalities, the litigation had ended.

## The "Form Over Substance" Question

It has been stated: "An unqualified reversal *ordinarily* has the effect of remanding the cause for a new trial on all of the issues *presented by the pleadings.*" (Italics added.) (3 Witkin, Cal. Procedure, Appeal (1954) § 186, p. 2381.) We will not repeat here reference to cases which Mr. Witkin cites to support that well-settled rule. But the rule that an unqualified reversal without directions remands the case and sets it at large for further trial is a *general* one. In *People* ex rel. *Dept. of Public Works* v. *Lagiss*, 223 Cal.App.2d 23, 45 [35 Cal.Rptr. 554], where the court held the general rule did apply, it stated, nevertheless, that the question is "whether it was the *intent* . . . to reverse the judgment without qualification. . . ." (Italics added.)

The fact that the rule we discuss is a "general" rule implies that it has limitations. One limitation is that a case is to be set at large for retrial only when that is the intent of the appellate court. "Judgment reversed" at the end of an opinion is, of course, strong indication of such intent. But when the opinion as a whole establishes a contrary intention, the

breached this brokerage contract. (Finding 13.) This finding is inconsistent with good faith, which, under the law, would preclude such a finding."

rule is inoperative. To hold otherwise would be to make a fetish of form. Our Supreme Court did not give the last sentence such overriding importance in *Snapp* v. *State Farm Fire & Cas. Co.* (1964) 60 Cal.2d 816 [36 Cal.Rptr. 612, 388 P.2d 884]. There a trial court's judgment for a plaintiff had awarded him $8,168.25. On appeal the appellate court held he should have been awarded $25,000. The last sentence of the opinion, however, did not "modify" the trial court's judgment to increase the award. It "reversed" the judgment with directions that the amount be so increased. When the remittitur went down, the trial court allowed interest only from the date of the revised judgment. The court in *Snapp* held that was error. It stated the rule that allowance of interest from the latter date would have been proper had the order actually intended a *reversal* but that when a modification is intended the modified judgment bears interest from the date of the original judgment in the trial court. It was held that although the order portion of the opinion had read "reversed" the court had obviously intended to say "modified." The court said the earlier opinion had shown that " [n]o issues remained to be determined. No further evidence was necessary. Thus, the so-called 'reversal' with directions, was, in fact and in law, a 'modification'." (P. 820.) The court concluded. (on p. 821) : "It is not the form of the order on the first appeal that controls, but the substance of that order. . . . The important question as to when interest commences should not depend on mere formalism, but on the substance of the order."

We have not, of course, been able to trace every instance in which an appellate court has, in the last line of its opinion, stated: "judgment reversed" and in which—reading the opinion as a whole—it was manifestly the court's intention to direct a defendant's judgment. We did, however, commence a journey through volume 65 of California Reports 2d, the same volume in which *Stromer* v. *Browning* appears. The first unqualified "judgment is reversed" we reached was *Carnation Co.* v. *City of Los Angeles* (1966) 65 Cal.2d 36, 41 [52 Cal.Rptr. 225, 416 P.2d 129]. There the trial court had held a certain tax levied by the City of Los Angeles against plaintiff to be invalid. The Supreme Court opinion held it was valid. We find it difficult to think that the court by "judgment reversed" without direction had intended that the case be remanded for retrial to the end that Carnation Company might amend its complaint to set up new facts to prove the tax was void.

Stromer cites *Erlin* v. *National Union Fire Ins. Co.* (1936) 7 Cal.2d 547 [61 P.2d 756], where an action for an agent's commission had resulted in a plaintiff's judgment in the trial court. The judgment was reversed on appeal. (217 Cal. 374.) The second *Erlin* appeal is a two-page opinion. It holds that the court on the first appeal had only intended to rule that plaintiff was not entitled to a commission on the facts then before it and that he should not be precluded from retrying his right to a commission on different evidence. We have read the opinion on the first appeal (in 217 Cal. 374). The trial court after the remittitur had gone down following the first *Erlin* appeal had interpreted the Supreme Court's intention as being to direct a judgment for defendant. On the second appeal the court held the trial court had been mistaken.

### THE LAW OF THE CASE

If we are also mistaken about the intent of the Supreme Court on the first appeal of *Stromer* v. *Browning, supra,* 65 Cal.2d 421, we are sure that court will be given an opportunity to set us straight. There is one matter about which we are absolutely sure. Appellant Stromer *does not now have* any new evidence which he was willing to disclose to the trial court or which he has been willing to relate to us upon the basis of which a judgment for Stromer could be legally supported.

We have read the record (a clerk's transcript) of the proceedings before the trial court when the two motions were argued. Written points and authorities are exhaustive in their treatment of the facts and law. Counsel for Browning submitted for the court's consideration the record in the first action. (Also the judge who heard the motions was the same judge who had presided at the trial of the case and was therefor familiar with the evidence.) It was pointed out that the facts relating to both the purchase and sale negotiations and the brokerage contract has been exhaustively tried. Effectually, Stromer was challenged to explain any possible new evidence or theory which would justify the time and expense to the parties and to the courts if a new trial was had. Counsel for Stromer declined that challenge. The trial court in ruling upon Stromer's motion concluded there was no reason to vacate its judgment because there was nothing to retry. On this appeal appellant's briefs are silent as to the existence of any new evidence or theory upon which Stromer could recover his commission. At oral argument questioning by this court

could elicit no information on that subject. Effectually, Stromer's position adds up to: Wait and see!

Appellant concedes that the doctrine of the law of the case would apply on any retrial of the case. The doctrine deals with the effect of the first appellate decision upon the subsequent retrial or appeal. It says that the decision of an appellate court stating a rule of law necessary to a decision establishes that rule and makes it determinative of the rights of the parties on any subsequent retrial or appeal. (See 3 Witkin, Cal. Procedure (1954) Appeal, § 210, p. 2420, and authorities cited.) The rule established by the first appeal in *Stromer* v. *Browning* was that there was no sufficient evidence to establish that Browning had acted arbitrarily or in bad faith. If there were a retrial (assuming, contrary to our belief, that one was ordered) and no substantial difference in the evidence at the retrial, the former decision is the law of the case. (See 3 Witkin, Cal. Procedure (1954) Appeal, § 213, p. 2424, and authorities cited.)

Appellant argues that he was entitled on his motion to an order vacating the trial court's judgment, wholly irrespective of any showing of merits. He even puts it in terms of "procedural due process"—a constitutional right.

### EQUITABLE PRINCIPLES GOVERN RELIEF GRANTED ON MOTIONS TO VACATE ERRONEOUS JUDGMENTS

As early as 1861 the California Supreme Court said in *Roland* v. *Kreyenhagen,* 18 Cal. 455, with reference to a section 473 motion (then Practice Act section 68)[3] at page 457: "The design of the act was to call into requisition [the court's] equitable powers. . . ." (See also *Olson* v. *Olson* (1957) 148 Cal.App.2d 479, 482 [306 P.2d 1036].)

 "The ultimate purpose of relief under C.C.P. 473 is to give the moving party a fair trial on the merits. Hence he must show that he has a meritorious case or defense, so that a different result may possibly be reached if the judgment or order is vacated. (*Greenamyer* v. *Board etc.* (1931) 116 C.A. 319, 325, 2 P.2d 848; *Doyle* v. *Rice Ranch Oil Co.* (1938) 28 C.A.2d 18, 81 P.2d 980 [plaintiff seeking relief must show cause of action]." (3 Witkin, Cal. Procedure (1954) Attack on Judgment in Trial Court, § 61, p. 2112.)

---

[3] Although Stromer purportedly based his motion upon Code of Civil Procedure section 473, strictly speaking it does not fall within that section (see *Consolidated Constr. Co.* v. *Pacific Elec. Ry. Co.* (1920) 184 Cal. 244, 247 [193 P. 238]) but addresses itself to the inherent powers of the court. The same equitable principles apply.

Appellant here has appealed to the equitable jurisdiction of the courts but without any showing of merits which could justify the exercise of that jurisdiction.

The appeal from the judgment is dismissed as being untimely. The orders (filed October 2, 1967, and October 13, 1967) are affirmed.

Friedman, J., and Regan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 19, 1969.