[Civ. No. 26787. First Dist., Div. Three. Feb. 10, 1971.]

THEODORE H. BARTH et al., Plaintiffs, v.
B. F. GOODRICH TIRE COMPANY, Defendant and Appellant;
PERRY & WHITELAW, INC., Defendant and Respondent.

**COUNSEL**

Lamb & Glynn for Defendant and Appellant.

Low & Ball and Remington Low for Defendant and Respondent.

No appearance for Plaintiffs.

**OPINION**

**BROWN (H. C.), J.**—Goodrich Tire Company, after paying a judgment, appeals from the denial of its motion to compel the codefendant, Perry & Whitelaw, Inc., to contribute its share of the judgment.

The action was for personal injuries sustained by plaintiffs (hereinafter Barth) in an automobile accident caused by a blowout of a tire on the station wagon in which they were riding. The tire was manufactured by defendant-appellant, Goodrich Tire Co. (Goodrich) and placed on the Barth station wagon by respondent, Perry & Whitelaw, Inc. (P & W), a tire distributor for Goodrich. The trial resulted in a jury verdict for Barth against Goodrich in the sum of $222,851.49, and in a defense verdict in favor of P & W.

Barth appealed the defense verdict in favor of P & W, and Goodrich appealed from its adverse verdict. On appeal the judgment in favor of Barth against Goodrich was affirmed and the judgment in favor of the defendant P & W was reversed. (See *Barth* v. *B. F. Goodrich Tire Co.,* 265 Cal.App.2d 228 [71 Cal.Rptr. 306].) The Court of Appeal held that the trial court erred in instructing the jury that P & W could be

liable under the doctrine of strict liability only if it was established that P & W *sold* the tire to plaintiffs. The court said that P & W could be held strictly liable as a supplier in the chain of getting goods from the manufacturer to the consumer without the necessity of a sale.

Goodrich paid the entire judgment amounting to $222,851.49. A satisfaction of judgment was given by the plaintiffs, and thereafter a dismissal without prejudice was filed in favor of P & W by plaintiffs. Goodrich moved for an order to compel contribution from P & W as a joint tortfeasor. The motion was denied and this appeal followed.

The appellant's contentions present two questions: First, did the reversal of the judgment by the appellate court in *Barth v. B. F. Goodrich Tire Co., supra,* constitute a judgment against P & W despite the wording of the opinion which did not include a direction for entry of judgment in favor of Barth and against P & W? Second, in the event the first question is answered in the affirmative, does P & W have the right of indemnity against Goodrich, which right would preclude Goodrich from compelling P & W to contribute its share of the amount paid to satisfy the judgment?

The answers to the two questions presented require consideration of the facts. The facts are set forth in detail in the opinion of the Court of Appeal in *Barth v. B. F. Goodrich Tire Co., supra,* 265 Cal.App.2d 228.

In April 1962, Shirley Barth was driving a 1961 Chevrolet six-to-nine passenger station wagon when a tire blew. The vehicle went out of control and crashed killing Mrs. Barth and causing injuries among the five passengers. The station wagon was one assigned to Mr. Barth by his employer. Prior to the accident, arrangements had been made by the employer with Goodrich to furnish replacement tires. The Barth station wagon needed new tires and, pursuant to the arrangements, an order was placed by Mr. Barth's employer and was filled by P & W, a wholesale and retail Goodrich distributor, who sold tires to individuals and serviced national accounts. P & W installed the tires from its stock. The tires were 800 x 14 black de luxe B. F. Goodrich Silvertown Rayon tubeless. These were the tires specified in the order and the size recommended by Goodrich for use on all 1961 Chevrolet station wagons like the Barth vehicle. After the accident, the ruptured tire still contained deep tread. There was no evidence of misuse of the tire or misconduct in driving by Barth which might have affected the tire adversely. At the time of the blowout, the station wagon was not being driven at an excessive speed. The tire experts called by Goodrich testified that the maximum carrying capacity of the tire in question, according to the standards

set by the Tire and Rim Association, was 1,175 pounds; "that an overload of 25 to 50 percent would be severe, and that if the tire was loaded 25 percent over the tire and rim carrying capacity, it would be expected to rupture before the tread was gone." (*Barth, supra,* p. 236.) At the time of the blowout, the station wagon with its occupants would constitute an overload on the tire and rim of 25 percent. P & W had knowledge of the proper weight to be carried by the tires. It had access to the Tire and Rim Association manual, as well as to other publications and service briefings provided by Goodrich. Neither Goodrich nor P & W ever communicated any information of this kind to the public unless specifically asked.

There was also evidence that a minute percentage of the tires contained sidewall defects caused by the manufacturer, Goodrich, which might lead to rupture under certain driving circumstances.

The appellate court, while unqualifiedly reversing the judgment in favor of P & W, did not direct that a judgment be entered in favor of Barth and against P & W so as to constitute P & W a cojudgment debtor to Barth.

P & W claims that the reversal does not determine as a matter of law that it is liable to Barth and that it has the right to relitigate this question of liability. It further argues that there being no judgment against P & W, the trial court's denial of Goodrich's petition for contribution was proper.

In order to be entitled to contribution, it is, of course, necessary that a judgment exist which has been rendered against two or more defendants. (Code Civ. Proc., § 875, subd. (a); see also *Guy F. Atkinson Co.* v. *Consani,* 223 Cal.App.2d 342, 343 [35 Cal.Rptr. 750].) Here the appellate court in *Barth,* while not directing that a judgment be entered against P & W, clearly reached that result.

We recognize that "[a]n unqualified reversal *ordinarily* has the effect of remanding the cause for a new trial on all of the issues presented by the pleadings." (3 Witkin, Cal. Procedure (1954), Appeal, § 186, p. 2381; italics added.) In *People* ex rel. *Dept. Pub. Wks.* v. *Lagiss,* 223 Cal.App.2d 23, 44-45 [35 Cal.Rptr. 554], the court characterized this rule as a *general* one subject to exception when the *intent* of the appellate court is shown to be otherwise. *People* ex rel. *Dept. Pub. Wks.* v. *Lagiss, supra,* was cited in the later case of *Stromer* v. *Browning,* 268 Cal.App.2d 513 [74 Cal.Rptr. 155], relied on by the appellant here. The court discusses the implications of the characterization of the rule as a general one by stating: "The fact that the rule we discuss is a

'general' rule implies that it has limitations. One limitation is that a case is to be set at large for retrial only when that is the intent of the appellate court. 'Judgment reversed' at the end of an opinion is, of course, strong indication of such intent. But when the opinion as a whole establishes a contrary intention, the rule is inoperative. To hold otherwise would be to make a fetish of form. . . ." (Pp. 518-519.)

In *Barth* the appellate court decided that in a products liability situation any supplier of the product in the chain of transmittal may be held strictly liable. In explaining the precedents on which its conclusion is based, the court makes clear that it included P & W in the chain of this strict liability and said: *"Our view that as a distributor and supplier, Perry & Whitelaw was strictly liable to the consumer and ultimate user, is also supported by the decisions of our Supreme Court, a pioneer in the development of the law of products liability."* (*Barth v. B. F. Goodrich Tire Co., supra,* 254 Cal.App.2d 228, 253; italics added.)

It was not disputed that P & W was the distributor and supplier of the tires which caused the injury. As such, the court has said they are liable. P & W has not pointed to any facts that could be brought out on a retrial that would show they were not the distributor or supplier or that would show the tires they supplied did not cause the injury. Although P & W argues that a retrial might prove conclusively the sole cause of the accident was a defectively manufactured tire, this statement mistakes the reason for holding the supplier of the tire strictly liable. Even if the sole cause was a defect in manufacture, the supplier would be strictly liable.

Our conclusion that the court in *Barth* intended to establish liability on P & W without retrial is further supported by the court's indication of satisfaction with the amount of the judgment. *Barth* states: ". . . [A]lthough the judgment was large, we do not regard the damages as excessive as a matter of law." (P. 241.)

There being no question that P & W would be held strictly liable with Goodrich to the Barths and there being no issue as to damages, we conclude that the reversal by the court in *Barth* constitutes P & W as a co-judgment debtor with Goodrich.

We have determined that the requirements of Code of Civil Procedure section 875, subdivision (a), have been met, i.e., that a money judgment has been rendered jointly against the two defendants in the tort action of Barth and P & W.

The question next presented is whether Goodrich is precluded

from contribution by reason of the provisions of Code of Civil Procedure section 875, subdivision (f).

Section 875, subdivision (f), provides that "[t]his title shall not impair any right of indemnity under existing law, and where one tortfeasor judgment debtor is entitled to indemnity from another there shall be no right of contribution between them." P & W argues that even if the requirement of a joint money judgment has been met, Goodrich cannot have contribution because it is primarily liable as a manufacturer and would have to indemnify P & W, whose liability is secondary, having been imposed by operation of law.

The right of indemnity is now well established in California. (See *Anderson* v. *Atchison, T. & S. F. Ry. Co.,* 31 Cal.2d 117, 127 [187 P.2d 729]; Prosser on Torts (3d ed. 1964) pp. 480-487; *Russell* v. *George Rose & Co., Inc.,* 276 Cal.App.2d 456, 460 [80 Cal.Rptr. 755].) ▪ The basic theory of implied indemnity is that where two persons are responsible by law to an injured person, if one is passively or impliedly negligent, he is entitled to shift the entire liability for the loss to the other party whose active negligence was the proximate and immediate cause of the loss. The basic theory is not novel. It is a shifting of the risk of loss from one upon whom it falls to the person who in justice should bear it. (See *Muth* v. *Urricelqui,* 251 Cal.App.2d 901, 908-909 [60 Cal.Rptr. 166].)

In *Cobb* v. *Southern Pac. Co.,* 251 Cal.App.2d 929, 933 [59 Cal. Rptr. 916], the court said: " " " 'The right of *indemnity* rests upon a difference between the primary and secondary liability of two persons each of whom is made responsible by the law to an injured party. It is a right which enures to a person who, without active fault on his part, has been compelled by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable. The difference between primary and secondary liability is not based on a difference in *degrees* of negligence or any doctrine of *comparative* negligence. . . . It depends on a difference in the *character* or *kind* of the wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person. . . .' . . . 'But the important point to be noted in all of the cases is that secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law *or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible.*' " ' " .

The fact that the retailer failed to discover a defect in manufacture, in the absence of an independent duty to inspect or facts to put him on notice, does not preclude the retailer's right to indemnity. (*Pearson Ford Co.* v. *Ford Motor Co.,* 273 Cal.App.2d 269, 273-274 [78 Cal.Rptr. 279].)

The liability of P & W here does not rest upon the reason that its negligence is imputed or constructive only, nor is it only based upon the legal relationship with Goodrich, *nor because it failed to discover or correct a defect or remedy a condition caused by Goodrich.*

P & W placed tires on a station wagon which it knew or reasonably should have known were inadequate when it was occupied by a capacity load of passengers. P & W were experienced tire dealers. They had access to the Goodrich manuals which prescribed the weight-bearing limitations of its tires. It is true that the *Barth* court speaks in terms of strict liability and would have held P & W liable as a part of the chain of distribution without more. However, the *Barth* court directs attention to the duty owed by both Goodrich and P & W to warn the consumer about the dangers of overload and that both had failed to fulfill this duty. In discussing Goodrich, the court said that "Goodrich knew that its tires were subject to overload" but did nothing to inform the public of the problem (*Barth* v. *Goodrich,* at p. 236). See *Gherna* v. *Ford Motor Co.,* 246 Cal.App.2d 639, 651 [55 Cal.Rptr. 94], for the proposition that "[a] manufacturer, as well as a dealer, must give adequate warning to the ultimate users of the product of any dangerous propensity which it knows or should have known would result in the type of accident that occurred [citation]. . . ." Later in the opinion, when the court is considering the liability of P & W, the court first disposes of the contention that a sale was necessary to impose strict liability on a component of the marketing enterprise and then adds: "Furthermore, in the instant case, *apart from Goodrich, Perry & Whitelaw was the only other party who had any knowledge or expertise as to the proper weight to be carried by the tires.* It had access to the Tire and Rim Association manual as well as to other 'service' publications and service briefings provided by Goodrich. However, Perry & Whitelaw never communicated any information of this kind to the public unless specifically asked." (P. 252; italics added.)

■ While the appellate court imposed strict liability upon P & W because of its position in the marketing enterprise, the court also pointed out that P & W participated in the wrong which led to injury to the plaintiffs. It is irrelevant to consider whether Goodrich's fault was more culpable in putting on the market a tire susceptible to overload on the vehicles for which it was recommended, or whether P & W's position in putting the

tire on the station wagon without warning of overload dangers gave P & W the last clear chance of avoiding the injury. ■ Neither the tort doctrine of comparative negligence nor last clear chance applies to the right of indemnity. (*Atchison, T. & S. F. Ry. Co.* v. *Lan Franco,* 267 Cal.App.2d 881, 890 [73 Cal.Rptr. 660]; *King* v. *Timber Structures, Inc.,* 240 Cal. App.2d 178, 182 [49 Cal.Rptr. 414]; *Cobb* v. *Southern Pac. Co., supra,* 251 Cal.App.2d 929, 933.) In *Actions Between Tortfeasors—The Implied Right of Indemnity,* it was stated: "Once the party seeking indemnity steps outside of his non-actor capacity, or acquires sufficient knowledge of the circumstances prior to the resulting injury, relief has generally not been granted." (32 So.Cal.L.Rev., pp. 295-296; see also *Atchison, T. & S. F. Ry. Co.* v. *Lan Franco, supra,* at pp. 886-887; *Cahill Bros., Inc.* v. *Clementina Co.,* 208 Cal.App.2d 367, 382 [25 Cal.Rptr. 301]; *Pearson Ford Co.* v. *Ford Motor Co., supra,* 273 Cal.App.2d 269.)

■ " '[T]he determination of whether or not indemnity should be allowed must of necessity depend upon the facts of each case.' " (*Atchison, supra,* at pp. 885-886, citing from *Herrero* v. *Atkinson,* 227 Cal.App.2d 69, 74 [38 Cal.Rptr. 490, 8 A.L.R.3d 629].) "Whether indemnity should be allowed or denied in a given situation is generally a question of fact for jury determination [citations], but where the claimant's active participation in the wrong appears clearly and indisputably in the evidence, he may be precluded from indemnification as a matter of law (*Cahill Bros., supra,* 382-383)." (*Pearson Ford Co.* v. *Ford Motor Co., supra,* 273 Cal.App.2d 269, 275.)

By reason of the foregoing, the order of the trial court denying Goodrich's motion for contribution is reversed, and the court is directed to order that P & W contribute pro rata to said judgment pursuant to Code of Civil Procedure section 875.

Draper, P. J., and Caldecott, J., concurred.

A petition for a rehearing was denied March 12, 1971, and respondent's petition for a hearing by the Supreme Court was denied April 8, 1971.