[Civ. No. 48377. Second Dist., Div. Five. Feb. 7, 1977.]

In re the Marriage of SYLVIA and SAMUEL STEINBERG.
SYLVIA STEINBERG, Appellant, v.
SAMUEL STEINBERG, Respondent.

**COUNSEL**

Morris Robinson for Appellant.

Grayson & Gross and Marvin Gross for Respondent.

OPINION

KAUS, P. J.—Petitioner Sylvia Steinberg appeals from a judgment "on bifurcated issues" which divided the community property of the parties. Respondent here and below is Samuel Steinberg.

BACKGROUND

This is the third trial and second appeal in this dissolution action, first filed in August 1969.

The parties were married in 1965, when Sylvia was 65 years old and Samuel was 60. Samuel owned various assets when they married; Sylvia owned nothing. Samuel was employed as a baker until some time after the parties separated. Sylvia was unemployed; her only income was from social security. They separated in August 1969. Sylvia claimed an interest in property concededly owned by Samuel when the parties married, which property, however, was held in joint tenancy when the parties separated. The status of this property was disputed.

The first judgment, entered in January 1971 after a full trial, was vacated by stipulation. A second trial was held and second judgment entered in December 1972. Sylvia appealed from this judgment. In December 1974, Division Four of this court filed an opinion, not certified for publication, in which numerous rulings were made concerning the determination of the community property:

1. Crest Drive property. "[N]o true joint tenancy was created in the Crest Drive property, and it remained Samuel's separate property."

2. Joint bank accounts. "[T]he presumption [of community property] prevails, and the finding contrary to it is unsupported by evidence. The result is that each of the parties owns, as his separate property, half the funds in the joint bank accounts."

3. Salkin promissory note. "The evidence shows [and appellant concedes] that at the time of trial the proceeds of the Salkin note had been completely disposed of, . . . ."

4. Pickford Street property. "Such evidence shows a common under-standing of the parties that the $26,000 [received when the property was

sold] although deposited in a joint tenancy account, was to remain Samuel's separate property."

5. Cemetery crypt. The second trial court found that one cemetery crypt, in Samuel's possession, was a gift to Sylvia. Nevertheless it awarded it to Samuel in exchange for furniture and furnishings, in Sylvia's possession, which that court found were the separate property of Samuel. "Sylvia is correct [that the trial court was without power to award the crypt to Samuel], for in a proceeding for dissolution of marriage, the court does not have the authority to award the separate property of one spouse to the other."

6. Samuel's pension. "[T]he trial court erred in failing to consider as community property that portion of the pension which was attributable to Samuel's employment during the marriage."

7. United States bonds and Israel bonds. The bonds were purchased "with the proceeds of corporate stock which [Samuel] had acquired upon the death of his first wife. . . . It follows that the bonds were Samuel's separate property."

8. Automobile. "Appellant offered no evidence concerning the automobile; . . . . Under these circumstances, Sylvia is in no position now to complain that the trial court failed to consider the automobile as community property."

Division Four affirmed the trial court's finding that a loan of $22,000 made by Samuel to his daughter was made with Samuel's separate property. After various rulings not involved in this appeal, the opinion concluded, as follows:

"The judgment, so far as it determined the property rights of the parties, is reversed. The trial court is directed to redetermine the property rights[6] of the parties in accordance with the views expressed in this opinion. We make no award of costs or attorneys' fees on this appeal, and further direct the trial court to determine and apportion these items in such manner as is deemed to be in the interests of justice. (Cal. Rules of Court, rule 26.)"

---

"[6]While it would be desirable to save the parties from the expense of a further hearing, we find outselves unable, in view of the record before us, to exercise rights given us by Civil Code section 4810."

At the third trial, the trial court refused to permit Sylvia to offer any evidence on any matters other than the three issues on which the appellate court had reversed—the joint bank accounts, the pension plan and one cemetery crypt. After a trial on those issues and Sylvia's attorneys entitlement to attorneys' fees, the trial court, on June 6, 1975, issued a memorandum of intended decision. The memorandum states:

"As directed by the Court of Appeals, the Court now makes its Judgment as to the Property rights of the parties in accordance with the views expressed in the opinion." The court then confirmed as Sylvia's separate property the cemetery crypt and confirmed as Samuel's separate property (1) the Crest Drive property; (2) the Salkin note and trust deed; (3) the $26,000 received for the Pickford Street property; (4) and (5) the United States and Israel bonds; (6) monies owed by Samuel's daughter; (7) oil rights agreement and royalties; (8) two cemetery crypts; and (9) pension payments received subject to a 25 percent interest in the community.

The court determined the community assets and distributed them as follows: to Sylvia: furniture and furnishings in her possession and 12.5 percent of any pension payments received by Samuel; to Samuel: furniture and furnishings in his possession. The court found that all "joint bank accounts which the Appellate Court found each party owned one-half as his separate property are no longer in existence and have been accounted for by [Samuel]." The memorandum also ordered attorneys' fees to be paid by Samuel to Sylvia's attorney.

On June 23, Sylvia filed a request for findings of fact and conclusions of law. This request was denied as untimely.

A "further judgment on bifurcated issues" was filed consistent with the memorandum of intended decision.

Sylvia appealed from the judgment, excepting those portions awarding the cemetery crypt and ordering Samuel to pay attorneys' fees. On appeal no contention is made that the award of Samuel's pension proceeds was erroneous and we deem any such issue abandoned.

### DISCUSSION

Sylvia contends that the trial court erred, first, in applying the "law of the case" to the factual issues raised in a previous appeal; second, in

failing to make findings of fact; and third, in effectively awarding to Samuel all monies from the joint bank accounts. Finally, she contends that the evidence does not support the judgment.[1]

## *Scope of Retrial*

■ Sylvia contends that the trial court erred in applying what she describes as "law of the case" in refusing to allow a full retrial on the character and disposition of all of the community property. She points out that the doctrine of law of the case "is exclusively concerned with issues of law and not fact." (*People* v. *Shuey* (1975) 13 Cal.3d 835, 842 [120 Cal.Rptr. 83, 533 P.2d 211], and cases collected.) She relies on the general rule that an unqualified reversal remands the case for a new trial and sets at large for readjudication all factual issues involved in the case. (E.g., *People* ex rel. *Dept. Pub. Wks.* v. *Lagiss* (1963) 223 Cal.App.2d 23, 44 [35 Cal.Rptr. 554].)

The general rule does not, however, apply to this case. ■ First, an appellate court is not required in reversing a judgment to order or permit a retrial of all the issues involved in the first appeal. "Where the error found to have been committed has affected the determination of but one or more of a greater number of distinct and severable issues or causes of action, we need only reverse the judgment in part." (*Alvarez* v. *Felker Mfg. Co.* (1964) 230 Cal.App.2d 987, 1006 [41 Cal.Rptr. 514].) "The practice of reversing a judgment in part only is well settled in this court [citations], and should be followed where the error found to have been committed has affected the determination of but one or more of a greater number of distinct and severable issues or causes of action." (*Gray* v. *Cotton* (1913) 166 Cal. 130, 139 [134 P. 1145]; see also *Lobree* v. *L. E. White Lumber Co.* (1921) 53 Cal.App. 85, 92-93 [199 P. 821].) ■ The issue, then, is not whether "law of the case" applies but whether the appellate court reversed the judgment only in part.

Even where the judgment is unqualified in language—e.g., "judgment reversed"—the question is whether the appellate court intended to

[1]The record as designated by Sylvia consists of an engrossed settled statement in lieu of reporter's and clerk's transcripts, selected documents from the superior court file, selected portions of the reporter's transcript, selected items from the record on the first appeal and about 28 exhibits. The full reporter's transcript is here based on respondent's motion to augment the record. Sylvia contends that the trial court erred in refusing to include in the engrossed settled statement certain testimony contained in the reporter's transcript. Since the full reporter's transcript is now before this court, we assume that the matter was raised in appellant's opening brief only to protect her record.

reverse the judgment without qualification. (*Stromer* v. *Browning* (1968) 268 Cal.App.2d 513, 518 [74 Cal.Rptr. 155]; see also *Barth* v. *B. F. Goodrich Tire Co.* (1971) 15 Cal.App.3d 137, 141-142 [92 Cal.Rptr. 809].) A fortiori, where, as here, the appellate court did not simply reverse, a full retrial would not be necessary when the court's clear intention was otherwise. (See *Davies* v. *Krasna* (1970) 12 Cal.App.3d 1049, 1053 [91 Cal.Rptr. 250].)

Division Four, as stated above, made rulings on a catalogue of contested items. It then reversed the judgment insofar as it determined the property rights of the parties and directed the trial court "to redetermine the property rights of the parties in accordance with the views expressed in this opinion." The court specifically declined to make an award of costs or attorneys' fees on appeal and directed the trial court to determine and apportion those items. The court recognized the desirability of saving the parties from the expense of a further hearing, but found itself "unable, in view of the record before us, to exercise rights given us by Civil Code section 4810." (See fn. 6, *ante.*)

We are satisfied that in this case Division Four did not intend to order a third trial, relitigating the right to a collection of items, ranging from a 1966 automobile then costing $2,000 to the cash proceeds from the Pickford Street property. That first appeal, it is to be noted, followed the second full trial and second judgment in this matter. This case, involving a four-year marriage which ended in 1969, has been in litigation ever since, and must come to an end.

The third full trial would have led to a decision which displeased either one or both parties, and a second appeal, intended to scrutinize the trial court's disposition of each item of property. And, since sufficiency of the evidence is a question of law to which the doctrine of law of the case applies (*People* v. *Shuey, supra,* 13 Cal.3d 835, 842), the reviewing court would first be required to decide whether the evidence presented at the third trial was "materially" or "essentially" or "substantially" different from that presented at the second trial to decide whether the first appellate decision controlled. (*Estate of Baird* (1924) 193 Cal. 225, 244-245 [223 P. 974].) Unless it did so decide or unless the reviewing court in the second appeal from the third trial agreed in full with the trial court's judgment, the matter would once again be set at large, and the right to each item, including the cemetery crypt and the 1966 automobile, would again be litigated. We do not believe that Division Four

intended this result. The trial court did not err in refusing to reopen the entire case.

### Failure to Make Findings

■ Sylvia contends that the trial court erred in refusing to make findings of fact and conclusions of law, the request for which was concededly filed seven days late. The request was properly denied by the trial court. Sylvia's right to findings of fact and conclusions of law was dependent upon her requesting them in a timely fashion. (Code Civ. Proc., § 632, subd. 1; Cal. Rules of Court, rule 232(b).) This she did not do.

### Proceeds of Bank Accounts

Sylvia contends that the trial court's determination that Samuel had "fully accounted for" the proceeds of the joint bank accounts, all concededly community property, is not supported by substantial evidence.

At times during their marriage, the couple had—apparently—a dozen joint accounts, not all open at the same time. Sylvia's contentions that Samuel did not properly account for the proceeds of these accounts does not take into consideration the following factors: first, although Samuel's monthly income was about $625 a month, the couple's normal monthly expenses were $725 a month. Second, amounts totaling $9,000 were withdrawn by Samuel to purchase the cemetery crypts and a fur coat, ring and earrings for Sylvia. Third, $26,000 deposited into one of the accounts was, as the Court of Appeal found in the previous appeal, Samuel's separate property, proceeds from the Pickford Street sale. Fourth, some of the withdrawals from the accounts were made by Sylvia, including, for example, a $2,600 withdrawal from an account at Great Western Savings, and $8,000 from a Home Savings account.[2]

■ Although the burden was upon Samuel to account for the money which he withdrew from the accounts, the burden here is on Sylvia to show that there is no substantial evidence to support the trial court's conclusion that Samuel did so account. This she has not done. On this record, we cannot conclude that the trial court erred.

---

[2]Although Samuel waived any claim he might have to the $8,000 withdrawn by Sylvia, this amount is relevant in determining whether Samuel did adequately account for the proceeds.

*Sufficiency of the Evidence*

Sylvia contends that there was no evidence to support the division of the community property because no value was placed on various items. That contention is without merit. Virtually all of the property was, as noted, found to be Samuel's separate property. The trial court did find that 25 percent of the pension payments received by Samuel were community property and awarded Sylvia 12.5 percent of such payments, and Sylvia does not challenge the sufficiency of that finding. Since the joint bank accounts were found to be no longer in existence, and fully accounted for by Samuel, no valuation was necessary or possible. Thus, it appears that Sylvia's complaint boils down to the trial court's failure to place a value on the furniture and furnishings in Samuel's and Sylvia's possession. No evidence was offered concerning the value of each item, and the court was entitled in the circumstances to assume that the furnishings retained by each party were substantially equal.

The judgment is affirmed.

Stephens, J., and Ashby, J., concurred.

A petition for a rehearing was denied March 1, 1977, and appellant's petition for a hearing by the Supreme Court was denied April 7, 1977.