[No. G000043. Fourth Dist., Div. Three. Oct. 25, 1985.]

WANDA H. MOORE, Plaintiff and Appellant, v.
CITY OF ORANGE et al., Defendants and Respondents.

## COUNSEL

Parker & Covert, Clayton H. Parker, Spencer E. Covert, Jr., Margaret A. Chidester, Susan L. Straight and Verna P. Bromley for Plaintiff and Appellant.

Furman B. Roberts, City Attorney, Charles A. Adamek, Caroline B. Newcombe and Lord, Bissell & Brook for Defendants and Respondents.

## OPINION

**SONENSHINE, J.**—Wanda Moore appeals the granting of summary judgment to the City of Orange and dismissal of her petition for writ of mandate. The issue presented is whether an earlier unqualified reversal allows Moore a trial de novo on a theory not presented, but essentially conceded, in the original trial.

Moore served as a deputy city clerk in the City of Orange from 1976 to 1980. She was terminated without written explanation or a hearing (Gov. Code, § 40813).[1] Section 40813 provides: "The city clerk may appoint deputies, for whose acts he and his bondsmen are responsible. The deputies shall hold office at the pleasure of the city clerk and receive such compensation as is provided by the legislative body."

She filed a petition for writ of mandate, alleging the city's resolution number 5045,[2] adopted in 1979, gave her the status of a permanent employee and thus precluded her termination without due process. Following a hearing, the court granted her petition, finding enactment of resolution number 5045 elevated Moore above the discretionary removal dictates of section 40813. On appeal, the judgment was reversed without direction. Moore then petitioned for, but was denied, a hearing in the Supreme Court.

---

[1] All statutory references are to the Government Code unless otherwise designated.

[2] The resolution related to the classification, compensation and terms of employment of certain employees.

The city, in August 1982, filed a motion for summary judgment, claiming the appellate court decision was determinative and no triable issues of fact remained. In September, Moore filed opposition concurrently with a request for leave to file a second amended petition for writ of mandate. Attached to both pleadings was a declaration by Moore's attorney stating he had been told by Moore, *after* receiving the appellate court opinion, she was appointed by the city manager, not the city clerk.[3] The motion for summary judgment was thereafter granted and Moore took her request to file a second amended petition off calendar.

■ The first appellate decision, after the Supreme Court denied hearing, became the law of the case. Any principle or rule of law necessary to its decision "'must be adhered to throughout [the case's] subsequent progress . . . .'" (*People* v. *Shuey* (1975) 13 Cal.3d 835, 841 [120 Cal.Rptr. 83, 533 P.2d 211].) In its opinion, Division Two clearly stated section 40813 was controlling. It provides the *only* authority for termination of deputy city clerks. There is no corresponding power granted to the city. The court construed section 40813 as vesting "*in the city clerk* the power to appoint and to determine the deputies for whose acts the clerk is made responsible." (Italics added.) The city is authorized to provide compensation, not to terminate or "to prescribe a different procedure for termination than that provided by state law." Thus, the city could not, by enactment of resolutions or through its city manager, usurp the termination power granted to the city clerk. The court's construction of the statute is conclusive upon any subsequent actions in the same case. (*People* v. *Shuey, supra,* 13 Cal.3d 835, 842.)

■ Moore argues the unqualified reversal by Division Two of this court effectively remanded the cause for trial de novo on all issues presented by the pleadings. She relies on *Weightman* v. *Hadley* (1956) 138 Cal.App.2d 831 [292 P.2d 909] for the proposition "[t]he consequence of a simple reversal is that the parties in the trial court have the same rights which they originally had. [Citation.] The cause is at large for readjudication of all issues involved in the case." (*Id.,* at p. 836.)

■ What Moore overlooks is a new trial, if intended by the reversal, gives only an "'opportunity to present evidence in support of the allegations of [her] complaint.'" (*Ibid.*) Unqualified reversals which contemplate a new trial envision "'a *re-examination* of an *issue of fact.'*" (*Id.,* at p. 838, italics added.) The judgments are reversed on the ground the findings were not justified by the evidence.

---

[3]The appellate opinion contained the statement "Ms. Moore was appointed by the city clerk pursuant to California Government Code section 40813 . . . ."

Here, on the other hand, there was no dispute as to the facts. The city contended from the outset Moore was appointed pursuant to section 40813. Moore merely alleged that "*notwithstanding* the provisions of Government Code Section 40813," she was entitled to due process "*by virtue of* adoption of Resolution Number 5045." (Italics added.)

Citing the proposition the law of the case "is exclusively concerned with issues of law and not fact" (*People* v. *Shuey, supra,* 13 Cal.3d 835, 842), Moore boldly asserts the appellate court incorrectly "assumed" she was appointed by the city clerk. Thus, she argues, she is entitled to a new trial to present contrary evidence. The contention is without foundation. She stated in her opposition to the city's objections to her proposed findings of fact and conclusions of law "the facts, for the most part, were undisputed, and the Court [at the first trial], was, in essence, requested to rule on the legal consequences thereof." Moreover, the findings and conclusions, *prepared by Moore,* contain the following: "Petitioner's position of Deputy City Clerk was created by and was subject to the provisions of Government Code Section 40813 prior to adoption of Resolution No. 5045."

Not only did she not contest the city's assertion she was appointed by the city clerk, she in fact admitted but for the passage of the resolution she was subject to the dictates of section 40813. As respondent on the first appeal, she stated the only issue was "whether City of Orange Resolution No. 5045 *granted* Mrs. Moore a property right . . . ." There was never any contention she had that right prior to the city's enactment. As she argued to the appellate court at that time, her "legitimate claim of entitlement to pretermination due process [was] founded on Resolution No. 5045 . . . ." Again she acknowledged *prior* to number 5045 she had no property right in her position.

Division Two of this district stated resolution number 5045 was ambiguous. However, it was unnecessary to resolve the ambiguity[4] because of the mandatory provisions of section 40813, namely, deputy city clerks, for whom the city clerk is personally responsible, "shall hold office at the pleasure of the city clerk." The court stated, "Government Code section 40813 is clear. It vests in the city clerk the power to appoint and terminate the deputies for whose acts the clerk is made responsible. The city legislature is authorized to provide for the compensation of such deputies, but is not empowered either to terminate the deputies or to prescribe a different procedure for termination than that provided by state law."

---

[4]Had the finding been required, the court clearly leaned toward finding resolution number 5045 had no effect on Moore's permanency as an employee, other than merely as a member of a compensation class level.

The court noted "the effect of Government Code section 40813 is to grant to the city clerk the discretionary right to discharge deputy city clerks for whose acts the city clerk is made responsible under the code section. [¶] If City of Orange resolution No. 5045 is interpreted as requiring that right to be limited to dismissal for cause only, then the resolution is in direct conflict with the express language of the statute. Local legislation in conflict with general state law is void and unenforceable." Thus refusing to give credence to an interpretation of resolution number 5045 in conflict with section 40813, the court concluded Moore remained subject to section 40813, as she was prior to its enactment.

■ "[T]he rule that an unqualified reversal without directions remands the case and sets it at large for further trial is a *general* one." (*Stromer* v. *Browning* (1968) 268 Cal.App.2d 513, 518 [74 Cal.Rptr. 155].) This "implies that it has limitations." (*Ibid.*) ■ The *Stromer* court addressed a prior California Supreme Court reversal of an appellate court ruling allowing a real estate broker his commission. The Supreme Court had determined the seller had not shown a lack of good faith and its "opinion reads: 'Under the circumstances, plaintiff is not entitled to recover his commission.' The last sentence is 'The judgment is reversed.' " (*Id.*, at p. 517.) The trial court thereafter entered judgment for the seller. On appeal, the appellant argued he was entitled to a retrial. The reviewing court disagreed: "After a case fully tried, with facts not in dispute, the intent of the Supreme Court to us appears patent. It intended, as we read its opinion, that judgment in [the seller's] favor be entered. We can find nothing left for the trial court to retry. Except for formalities, the litigation had ended." (*Id.*, at p. 518.)

The *Stromer* court traced several opinions containing unqualified reversals "in which—reading the opinion as a whole—it was manifestly the court's intention to direct a defendant's judgment. . . . [In *Carnation Co.* v. *City of Los Angeles* (1966) 65 Cal.2d 36 (52 Cal.Rptr. 225, 416 P.2d 129)] the trial court had held a certain tax levied by the City of Los Angeles against plaintiff to be invalid. The Supreme Court opinion held it was valid. We find it difficult to think that the court by 'judgment reversed' without direction had intended that the case be remanded for retrial to the end that Carnation Company might amend its complaint to set up new facts to prove the tax was void." (*Id.*, at p. 519; see also *Barth* v. *B. F. Goodrich Tire Co.* (1971) 15 Cal.App.3d 137 [92 Cal.Rptr. 809], unqualified reversal interpreted as directing judgment against respondent; *Salaman* v. *Bolt* (1977) 74 Cal.App.3d 907 [141 Cal.Rptr. 841], unqualified reversal intended to grant judgment lien.)

Similarly, in this instance, we find it difficult to believe the court intended a rerun of the trial after its firm announcement: "We conclude that respon-

dent served at the pleasure of the city clerk, that she had no constitutionally protected property interest in the position and could be discharged without cause. [¶] Since respondent was *not entitled to any of the substantive relief sought in her petition* for writ of mandate, the award of attorney's fees and costs was improper. [¶] Judgment reversed." (Italics added.)[5]

There was no allegation Moore derived any right to a pretermination hearing because she was appointed by the city manager and not the city clerk. She in fact sued the city clerk, naming also the city as the legislative body providing her compensation and responsible for the resolution. Her only contention, at the first trial and on appeal, was entitlement to due process bestowed upon her by virtue of enactment of resolution number 5045. Moreover—and a factor we find compelling—she included in the findings the assertion her position was created by and subject to section 40813. Thus, Division Two's decision, declining to find resolution number 5045 gave her property rights in her position, and finding section 40813 determinative, left nothing for the trial court to retry. She was not entitled to a pretermination hearing based on her *pleadings*.

Our reading of the prior appellate opinion convinces us the court intended judgment be entered for the city and the city clerk.

---

[5]Nor are we impressed with Moore's insistence "new evidence" is available to prove she was appointed by the city manager and not the city clerk. The "new evidence" consisted of her counsel's assertion she was hired by the city attorney. As "proof" he attached a copy of the city's personnel action report indicating Moore's initial employment. Under the heading "Authorization," it provided:

"Department Head—Recommended—[signature]

"For/City Manager—Approved—[signature]"

First, the information was available at the time the complaint was filed. The report was in fact attached to Moore's complaint. Second, section 40813 clearly grants appointive power to the city clerk. We are cited to no authority granting similar power to the city attorney. Nor do we suppose it likely because it is the clerk who must provide the bond and be responsible for the deputies' actions. While appointments *may* be made by the clerk, the deputies *shall* serve at his/her pleasure. Third, by her own admission, Moore's position was "created by and subject to 40813." Fourth, and most important, the document noticing her initial employment belies her contention. It clearly provided for recommendation by the city clerk, *followed by* approval of the city manager. But because a city manager *approves* a selection for deputy city clerk does not mean the city manager appoints. There is nothing to approve until the appointment is made.

The word "appoint" means "[t]o select or designate to fill . . . [a] position . . . ." (The American Heritage Dict. (2d ed. 1982) p. 121.) We would have no problem finding Moore was selected for, and thus appointed to, the position by the city clerk. The mere fact that the appointment must be approved by the city manager does not detract from the appointment process. The "approval" is but official confirmation or ratification (*id.*, at p. 122) by a representative of the legislative body which would pay Moore's salary.

The judgment is affirmed. ■ ■ ■ ■ Respondent to receive costs.[6]

Trotter, P. J., and Crosby, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 15, 1986.

---

[6]The city has requested sanctions for a frivolous appeal. Although we affirm the judgment, we cannot find the appeal so "totally and completely without merit" as to require their imposition. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179].)

The city also argues (1) Moore's attorney's declarations were not properly before the court, not being based on personal knowledge, and (2) Moore's documents were not originals. In light of our decision we do not discuss these contentions. However, we note there was no objection below.