[S.F. No. 23596. May 26, 1978.]

SAFEWAY STORES, INC., Cross-complainant and Respondent, v. NEST-KART, Cross-defendant and Appellant.

COUNSEL

Robert E. Lee, Robert F. Price, Lawler, Felix & Hall and Erwin E. Adler for Cross-defendant and Appellant.

Burt Pines, City Attorney (Los Angeles), John T. Neville, Assistant City Attorney, Daniel U. Smith, Deputy City Attorney, Ruston, Nance & DiCaro, Donald A. Ruston, Donald K. King, Gerald H. Genard, Grace, Neumeyer & Otto, Eugene R. Grace, Richard A. Neumeyer, Arthur Paul Berg, John W. Wade, Robert A. Seligson, Jacques M. Adler, Roger S. Poore, Haight, Dickson, Brown, Bonesteel & Rigg and Roy G. Weatherup as Amici Curiae on behalf of Cross-defendant and Appellant.

Hoge, Fenton, Jones & Appel, Philip Young and H. R. Lloyd, Jr., for Cross-complainant and Respondent.

OPINION

**TOBRINER, J.**—This is the latest in a series of recent cases in which our court has been called upon to determine the effect that our seminal comparative negligence decision in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393] should have on a variety of related areas of California tort law. In *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [143 Cal.Rptr. 692, 574 P.2d 763], we have determined that principles of comparative negligence, applied in *Li* to apportion responsibility between a negligent plaintiff and

a negligent defendant, should be utilized as the basis for apportioning liability among multiple negligent tortfeasors pursuant to a comparative indemnity doctrine. In *Daly* v. *General Motors Corp.* (1978) 20 Cal.3d 725 [144 Cal.Rptr. 380, 575 P.2d 1162] we have concluded that comparative fault principles should be applied to apportion responsibility between a strictly liable defendant and a negligent plaintiff in a product liability action.

In the instant case, we confront an issue which in some respects represents a synthesis of the issues presented in *American Motorcycle* and *Daly*. The issue raised here is whether the comparative fault principle of *Li* should be utilized as the basis for apportioning liability between two tortfeasors, one whose liability rests upon California's strict product liability doctrine and the other whose liability derives, at least in part, from negligence theory.

We have determined that, in light of our holdings in *American Motorcycle* and *Daly*, liability in the instant case can and should appropriately be apportioned between the two tortfeasors in conformity with the comparative fault findings rendered by the jury at trial. Because the trial court's decision in this case was based on its belief that apportionment on such a comparative fault basis was not possible under present California law, we conclude that the challenged order must be reversed.

1. *The facts*

In January 1972, plaintiff Rita Elliot was injured in a Safeway supermarket when the shopping cart she was using broke and fell on her foot, causing serious injuries requiring surgery. Plaintiff brought suit against Safeway (the owner of the shopping cart who had made it available for customers' use), Nest-Kart, a division of Folding Carrier Corporation (the manufacturer of the cart), and Technibilt Corporation (a company that, on occasion, had repaired some of Safeway's shopping carts), alleging that the various defendants were liable for her injuries under both strict product liability and negligence principles; defendants, in response, claimed that the plaintiff's own negligence was a proximate cause of the accident. At trial, the jury absolved both plaintiff and Technibilt of any responsibility for the accident, and returned a verdict for plaintiff of $25,000 against both Safeway and Nest-Kart.

The trial in this matter occurred subsequent to our court's decision in *Li* v. *Yellow Cab Co., supra,* and the trial court, heeding this court's advice in *Li* to use "broad discretion" in devising procedures to implement that decision's principles (13 Cal.3d at p. 829), directed the jury to make "special findings" indicating first, upon what theory, if any, each defendant was found liable, and second, what proportion of "fault" for the injuries was attributable to each defendant found liable. In response, the jury indicated that Safeway's liability rested on both negligence and strict liability principles, that Nest-Kart's liability was grounded solely on strict liability principles and that Safeway's comparative fault for the accident was 80 percent and Nest-Kart's was 20 percent.[1]

Thereafter, the trial court entered a judgment of $25,000 in favor of plaintiff and against Safeway and Nest-Kart. After the judgment had initially been satisfied by Safeway and Nest-Kart on an 80 percent-20 percent basis, Safeway moved in the trial court for a judgment of contribution to require Nest-Kart to pay an additional 30 percent of the judgment to Safeway, so as to achieve an equal 50-50 apportionment between the two tortfeasors. The trial court, while indicating that "common sense" called for an apportionment of the judgment on a comparative fault basis, ultimately concluded that such comparative apportionment was not permissible in light of the existing statutory

---

[1]The special findings, as returned by the jury, read:

"A. If you find that Plaintiff is entitled to recover from Defendants, or any of them, please indicate below upon which one or more theories or basis of recovery, formed the basis of your finding of liability as to said Defendant or Defendants.

"1. Negligence
SAFEWAY STORES ___X___ Yes____No
TECHNIBILT CORPORATION____Yes _X_ No
FOLDING CARRIER CORPORATION [Nest-Kart]
____Yes ___X___ No

"2. Strict Liability
SAFEWAY STORES ___X___ Yes____No
FOLDING CARRIER CORPORATION [Nest-Kart]
___X___ Yes____No

"3. Breach of Warranty
FOLDING CARRIER CORPORATION [Nest-Kart]
___X___ Yes____No

"B. If you find that Plaintiff is entitled to recover from any of the Defendants, and with the Defendants whose fault proximately contributed to the Plaintiff's injuries being 100%, what proportion of such combined fault is attributable to each defendant found liable. The word 'fault' as used herein, means a defective product or negligence which was a proximate cause of the accident.

"Answer: SAFEWAY STORES, INC._____ 80.0%
TECHNIBILT CORPORATION_____ 0%
FOLDING CARRIER CORPORATION
[Nest-Kart]_____ 20.0%"

contribution provisions.[2] Accordingly, acting pursuant to sections 875 and 876 of the Code of Civil Procedure,[3] the trial court granted Safeway's motion and ordered each defendant to bear 50 percent of the judgment. It is from this order that Nest-Kart appeals.[4]

2. ■■■ *Under the common law equitable indemnity doctrine as modified in American Motorcycle Assn. v. Superior Court, liability among joint tortfeasors may be apportioned on a comparative fault basis. Such apportionment may appropriately be effected between a strictly liable defendant and a negligent defendant, as well as between multiple negligent defendants.*

As noted above, in determining whether to grant Safeway's motion for contribution, the trial court looked solely to California's statutory contribution provisions and, adhering to the interpretation of these statutes established by past decisions (see, e.g., *E. B. Wills Co.* v. *Superior Court* (1976) 56 Cal.App.3d 650, 653 [128 Cal.Rptr. 541]; *Herrero* v. *Atkinson* (1964) 227 Cal.App.2d 69, 73 [38 Cal.Rptr. 490, 8 A.L.R.3d 629]), the court concluded that despite the jury's special findings allocating 80 percent of the responsibility for the accident to Safeway and only 20 percent of the responsibility to Nest-Kart, apportionment of the judgment could only be effected on a 50-50 basis.

---

[2]The trial court order states in part: "While common sense appears to this Court to require a proportionate contribution by the joint defendants based on their percentage of negligence, such a result is expressly prohibited by the California statutes. This Court cannot find a way out of this statutory restraint. Accordingly, the only way this Court could avoid the contribution statutes would be to declare them unconstitutional. However, this Court does not feel inclined to go that far. As a result, while the Court's visceral feeling is to apportion the judgment between the defendants on an 80-20 basis, under the present statutory restraints, this Court will not do so. If the contribution statutes are to be changed to conform with the Court's view of the *Li* philosophy, then it should be changed by the legislature or a Court of higher authority."

[3]Section 875 provides in part: "(a) Where a money judgment has been rendered jointly against two or more defendants in a tort action there shall be a right of contribution among them as hereinafter provided. (b) Such right of contribution shall be administered in accordance with the principles of equity. (c) Such right of contribution may be enforced only after one tortfeasor has, by payment, discharged the joint judgment or has paid more than his pro rata share thereof. . . ."

Section 876 provides in part: "(a) The pro rata share of each tortfeasor judgment debtor shall be determined by dividing the entire judgment equally among all of them. . . ."

[4]At trial, Safeway sought to obtain total indemnity from Nest-Kart under traditional equitable indemnity principles. The trial court denied Safeway's request for indemnity and Safeway has not appealed from that ruling.

In evaluating the merits of Safeway's claim against Nest-Kart solely on the basis of the contribution statutes, the trial court was, of course, following the conventional legal analysis which sharply distinguished between the doctrines of contribution and equitable indemnity. (See, e.g., *Rollins* v. *State of California* (1971) 14 Cal.App.3d 160, 165 [92 Cal.Rptr. 251]; *Atchison, T. & S. F. Ry. Co.* v. *Lan Franco* (1968) 267 Cal.App.2d 881, 886 [73 Cal.Rptr. 660].) Under this traditional approach, questions as to the apportionment of damages among multiple tortfeasors were seen as presenting solely an issue of contribution; the equitable indemnity doctrine, by contrast, was viewed historically as an all-or-nothing concept concerned only with the complete shifting of liability from one tortfeasor to another, rather than with the sharing of liability between the two.

In the recent *American Motorcycle* decision, however, after reviewing the origins and development of the common law equitable indemnity doctrine, our court concluded that in light of the principles of *Li*, the all-or-nothing character of the doctrine should be modified to permit partial indemnity among multiple tortfeasors on a comparative fault basis. (20 Cal.3d at pp. 591-599.) Our *American Motorcycle* opinion addressed at some length the question of whether California's present contribution statutes should be interpreted to preclude the evolution of such a common law comparative indemnity doctrine, and concluded that the Legislature did not intend to bar such a common law development. (20 Cal.3d at pp. 599-605.) Thus, *American Motorcycle* has now explicitly held that, contrary to the trial court's conclusion, the existing contribution statutes do not in themselves necessarily prohibit apportionment of liability among multiple tortfeasors on a comparative fault basis.

The question remains, however, whether the comparative indemnity doctrine, recognized in *American Motorcycle* as a permissible basis for apportioning liability among multiple *negligent* tortfeasors, may also be applied to apportion liability when, as in the instant case, the liability of one or more defendants derives from principles of strict liability. For a number of reasons, we conclude that the comparative indemnity doctrine does provide an appropriate basis for apportioning liability in such circumstances.

First, and most significantly, we believe that the basic equitable considerations that led our court to adopt a rule permitting comparative apportionment of liability among multiple tortfeasors apply equally in the instant setting. As *American Motorcycle* explains, although in both origin and development California's implied indemnity doctrine drew its

sustenance from fundamental equitable considerations, that doctrine, because of the unyielding all-or-nothing character of the traditional indemnity rule, frequently in actual operation fell far short of its equitable heritage. The doctrine failed to provide for a fair allocation of liability in those many instances in which the responsibility of multiple tortfeasors for an injury called for an apportionment of liability rather than a complete shift of liability from one tortfeasor to another. This fundamental failing of the traditional equitable indemnity doctrine was as apparent in cases involving strict product liability as in cases resting solely on negligence principles. Even when an injury was in part caused by a defective product, fairness and good social policy often dictated a sharing or apportionment of liability. (See generally Jensvold, *A Modern Approach to Loss Allocation Among Tortfeasors in Products Liability Cases* (1974) 58 Minn.L.Rev. 723.)

Indeed, in illustrating the inadequacies of the traditional all-or-nothing indemnity doctrine in *American Motorcycle* itself, we relied prominently on a decision which in fact arose in a product liability context. (See 20 Cal.3d at pp. 596-597.) In *Ford Motor Co.* v. *Robert J. Poeschl, Inc.* (1971) 21 Cal.App.3d 694 [98 Cal.Rptr. 702] (hereafter *Poeschl*), Ford, after learning of a defect in the rear brake lights of a number of 1964 Thunderbirds, had sent a recall notice to its dealers requesting them to recall all such cars for servicing of the brakes. One dealer and a leasing agency had failed to recall such a car and shortly thereafter a defective brake light caused an accident. The injured customer sued Ford, the dealer and the leasing agency, and when the dealer and leasing agency refused to contribute to any settlement Ford settled the customer's entire claim for $72,000 and bought an action against the dealer and the leasing agency for indemnification.

The *Poeschl* court, applying the governing all-or-nothing indemnity doctrine, found that Ford was not so free of responsibility for the accident that it should be completely absolved of liability. The court observed: "By notifying the dealer alone, Ford could not shift to the dealer the direct obligation of safety it owed the customer. . . . Ford's production of the defective car, coupled with its failure to attempt direct notice to the customer, breached a direct obligation it owed the latter. . . ." (21 Cal.App.3d at p. 699.)

Having concluded that Ford should not obtain complete indemnity for the accident, however, the *Poeschl* court, criticizing the existing rule, expressed its discontent with the fact that the traditional equitable

indemnity doctrine permitted the dealer and leasing agency to escape all liability whatsoever. The court observed: "The dealer and the leasing agency shared Ford's ability to reach the customer before the accident occurred. The complaint does not disclose whether these firms were stirred by the recall notice. On the assumption that they did nothing, their escape from financial responsibility is troublesome. Judicially favored objectives of deterrence and accident prevention would be promoted by imposing some liability on a dealer who knew of danger and did nothing. To shift the entire loss to him would not serve these objectives, for then the manufacturer would escape scot-free. *A wise rule of law—one designed to stimulate responsibility throughout the merchandising chain—would require both parties to share the loss. A rule of . . . partial indemnification would permit that result.*" (21 Cal.App.3d at p. 699.) (Italics added.)

Thus, as the facts of *Poeschl* demonstrate, even in cases in which one or more tortfeasors' liability rests on the principle of strict liability, fairness and other tort policies, such as deterrence of dangerous conduct or encouragement of accident-reducing behavior, frequently call for an apportionment of liability among multiple tortfeasors. Indeed, the instant case itself provides another apt example of such an instance, for here the jury evidently concluded that while the defectiveness of the shopping cart partially caused the accident, the primary fault for the accident lay with Safeway because of its negligent failure properly to maintain the cart in safe working condition. As the trial court observed, under these circumstances both "common sense" and equitable considerations suggest that Safeway should bear a proportionately greater share of liability for the accident than Nest-Kart.

Nothing in the rationale of strict product liability conflicts with a rule which apportions liability between a strictly liable defendant and other responsible tortfeasors. ▉ Although one of the principal social policies served by product liability doctrine is to assign liability to a party who possesses the ability to distribute losses over an appropriate segment of society (see *Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57, 62-63 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049]), this policy has never been viewed as so absolute as to require, or indeed as to permit, negligent tortfeasors who have also contributed to the injury to escape all liability whatsoever. Instead, from the initial adoption of strict product liability in *Greenman,* the propriety of awarding contribution between strictly liable and negligent defendants has been uniformly recognized. (See, e.g., *Pearson Ford Co.* v. *Ford Motor Co.* (1969) 273 Cal.App.2d 269, 277-278 [78 Cal.Rptr. 279]; *Barth* v. *B. F. Goodrich Tire Co.* (1971) 15

Cal.App.3d 137, 144-145 [92 Cal.Rptr. 809]; *Kerr Chemicals, Inc.* v. *Crown Cork & Seal Co.* (1971) 21 Cal.App.3d 1010, 1014-1017 [99 Cal.Rptr. 162].) With the advent of the common law comparative indemnity doctrine, we achieve a more precise apportionment of liability in circumstances such as the instant case by allocating damages on a comparative fault or a comparative responsibility basis, rather than by fixing an inflexible pro rata apportionment pursuant to the contribution statutes. (Cf. *Gardner* v. *Murphy* (1975) 54 Cal.App.3d 164, 166, fn. 2 [126 Cal.Rptr. 302].)

It is sometimes suggested, however, that while apportionment between strictly liable and negligent defendants may be a desirable goal, we encounter a fundamental doctrinal obstacle to any such apportionment in that no logical basis can be found for comparing the relative "fault" of a negligent defendant with that of a defendant whose liability rests on the "no fault" concept of strict product liability. Viewing the problem as a vain attempt to compare "apples and oranges," a number of commentators maintain that there is a significant difference in permitting a jury to apportion responsibility for an accident caused solely by a number of negligent parties and permitting such an apportionment for an accident caused by a combination of negligent and strictly liable parties. (See, e.g., Boone, *Comparative Negligence: Solution or Problem?* (Fall 1975) Cal. Trial Law.J. 17, 33; Levine, *Strict Products Liability and Comparative Negligence: The Collision of Fault and No-Fault* (1977) 14 San Diego L.Rev. 337, 351-356.) As our recent decision in *Daly* v. *General Motors Corp., supra,* explains, however, the suggested difficulties are more theoretical than practical, and experience in other jurisdictions demonstrates that juries are fully competent to apply comparative fault principles between negligent and strictly liable defendants. (See, e.g., *Gies* v. *Nissen Corp.* (1973) 57 Wis.2d 371 [204 N.W.2d 519, 526-527]; *City of Franklin* v. *Badger Ford Truck Sales, Inc.* (1973) 58 Wis.2d 641 [207 N.W.2d 866, 871-873]; *Noble* v. *Desco Shoe Corp.* (1973) 41 App.Div.2d 908 [343 N.Y.S.2d 134, 136]; cf. *Haney* v. *International Harvester Co.* (1972) 294 Minn. 375 [201 N.W.2d 140, 146].)

Indeed, if further confirmation of the feasibility of applying a comparative fault system in this context is needed, the proceedings in the instant case clearly furnish such proof. Here the jury, after considering evidence which demonstrated both that the shopping cart was defective and that Safeway had not utilized due care in maintaining its cart in safe working condition, apparently had no difficulty in finding both the manufacturer and Safeway liable for the accident, and apportioning the

lion's share (80 percent) of the fault for the accident to Safeway, rather than to the manufacturer. We see no reason to assume that a similar common sense determination of proportional fault or proportional responsibility will be beyond the ken of other juries in similar cases.

Finally, we note that a contrary conclusion, which confined the operation of the comparative indemnity doctrine to cases involving solely negligent defendants, would lead to bizarre, and indeed irrational, consequences. Thus, if we were to hold that the comparative indemnity doctrine could only be invoked by a negligent defendant but not a strictly liable defendant, a manufacturer who was actually negligent in producing a product would frequently be placed in a better position than a manufacturer who was free from negligence but who happened to produce a defective product, for the negligent manufacturer would be permitted to shift the bulk of liability to more negligent cotortfeasors, while the strictly liable defendant would be denied the benefit of such apportionment. (See *West* v. *Caterpillar Tractor Co., Inc.* (5th Cir. 1977) 547 F.2d 885, 887; Uniform Comparative Fault Act, § 1, com.) ■■■ Because we can discern no policy considerations that demand or justify such a result, we hold that in a case such as the instant one, the comparative indemnity doctrine may be utilized to allocate liability between a negligent and a strictly liable defendant.[5]

3. *Although the present case was tried prior to American Motorcycle, the common law comparative indemnity doctrine adopted in that case may be utilized as the basis for apportioning damages between defendants under the circumstances presented here.*

Having concluded that, in principle, the comparative equitable indemnity doctrine adopted in *American Motorcycle* may apply to a case involving a strictly liable defendant and a negligent defendant, we must finally decide whether the fact that the instant case was tried prior to our decision in *American Motorcycle* should bar the application of the comparative indemnity doctrine here. In *American Motorcycle*, the indemnity issue arose in a pretrial mandamus context, and the opinion consequently did not address the question of whether our modification of

[5]In the instant case the jury found that Safeway was itself negligent in failing to safely maintain its carts, and thus Safeway's liability is in no sense solely derivative or vicarious. Accordingly, we have no occasion to determine in this case whether the comparative indemnity doctrine should be applied in a situation in which a party's liability is entirely derivative or vicarious in nature. (Cf. *City of Franklin* v. *Badger Ford Truck Sales, Inc., supra,* 58 Wis.2d 641 [207 N.W.2d 866, 871-873] with *Kelly* v. *Long Island Lighting Co.* (1972) 31 N.Y.2d 25 [334 N.Y.S.2d 851, 286 N.E.2d 241, 243].)

the traditional indemnity doctrine should be applied to any cases tried prior to the finality of that decision.

■     As we noted in *Li,* "[i]t is the rule in this state that determinations [as to the retroactive or prospective effect of judicial decisions in civil cases] turn upon considerations of fairness and public policy. [Citation.]" (13 Cal.3d at p. 829.) In *Li* itself we determined that in light of "the very substantial number of [pending] cases" that had been tried under the long-established contributory negligence rule and "considerations of reliance" that had arisen in connection with such pending litigation, "a rule of limited retroactivity should obtain" under which *Li's* comparative negligence principles would apply only to the *Li* litigation itself and to all trials or retrials commenced after the date of *Li's* finality. *(Id.)* We reached a similar conclusion in our recent *Daly* decision, noting that in light of this court's intervening post-*Li* decision in *Horn* v. *General Motors Corp.* (1976) 17 Cal.3d 359, 370 [131 Cal.Rptr. 78, 551 P.2d 398], retroactive application of the *Daly* decision would unfairly undermine many litigants' reasonable reliance on pre-*Daly* law. (20 Cal.3d at p. 743.) The question presented here is whether our *American Motorcycle* decision should be given a comparable limited effect and applied only to cases tried after the finality of *American Motorcycle.*

■     As we explain, for a number of reasons we have concluded that such a limitation on *American Motorcycle's* application is unwarranted, and that the equitable comparative indemnity doctrine adopted therein may be applied in the circumstances of the instant case. First, as our opinion in *American Motorcycle* emphasized, the *Li* decision itself clearly indicated that its adoption of comparative negligence raised substantial questions with regard to the future application of California's contribution and indemnity doctrines. (13 Cal.3d at pp. 823, 826.) Consequently, multiple defendants in cases tried subsequent to *Li* have certainly been on notice that apportionment of their liability might ultimately be grounded on comparative negligence or comparative fault principles. (Cf. *In re Marriage of Brown* (1976) 15 Cal.3d 838, 850 [126 Cal.Rptr. 633, 544 P.2d 561].) Unlike *Daly,* no post-*Li* decision of this court had reaffirmed the vitality of the pre-*Li* equitable indemnity doctrine prior to the rendition of *American Motorcycle.* Thus, when—as in the instant case—the issue of comparative contribution or indemnity has been properly preserved below, no undue surprise or unfairness will result in applying the *American Motorcycle* decision to cases presently pending upon appeal.

■

Second, inasmuch as *Li* advised trial courts "to use broad discretion in seeking to assure that the principle stated is applied in the interest of justice" (13 Cal.3d at p. 829) and pointed up the "invaluable assistance" to be gained by the use of special verdicts or jury interrogatories (13 Cal.3d at p. 824), it appears probable that in a substantial number of multiple defendant cases, as in the instant litigation, trial courts will have directed juries to return special findings allocating responsibility among multiple defendants. We have no reason to suspect that the application of *American Motorcycle* to those cases in which the comparative contribution or comparative indemnity question has been properly preserved at trial and on appeal will result in such a serious disruption of the administration of justice so as to warrant denying the benefits of the *American Motorcycle* doctrine to those defendants who have diligently pursued the issue.[6]

Accordingly, we conclude that although the trial in this action occurred prior to our *American Motorcycle* and *Daly* decisions, appellant Nest-Kart should be accorded the benefit of *American Motorcycle*'s equitable indemnity doctrine.

The trial court order, apportioning liability on a pro rata basis in contravention of the jury's special finding on the comparative fault issue, is reversed.

Richardson, J., Manuel, J., and Newman, J., concurred.

**CLARK, J.**—*Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [143 Cal.Rptr. 692, 574 P.2d 763], and *Daly* v. *General Motors Corp.* (1978) 20 Cal.3d 725 [144 Cal.Rptr. 380, 575 P.2d 1162], compel concurrence in the judgment.

However, this case demonstrates the arbitrariness and wastefulness of the comparative fault system created by those cases. Plaintiff was injured

---

[6]Although prior to *Daly* trial courts may have been in doubt as to whether comparative fault principles could be applied between negligent and strictly liable defendants, the instant case illustrates that plaintiffs often pursue alternative strict liability and negligence theories against multiple defendants. Thus, trial courts in many multiple defendant cases will have requested juries to apportion responsibility between multiple defendants even when liability was posited, in part, on a strict liability rationale. Certainly when explicit findings as to the comparative fault of multiple defendants have already been made in the trial court, as in the case at bar, it presents no undue burden to permit such findings to be utilized as a basis for the allocation of liability among the defendants.

when a shopping cart broke and fell on her foot. Nest-Kart manufactured the defective cart, Safeway maintained and inspected it. While the jury determined Safeway was 80 percent at fault, it could just as well have concluded the manufacturer was 80 percent at fault. Such division is clearly arbitrary because it is standardless. Blind inquiry into relative fault is no better than the flip of a coin, and disputes over degree of fault must greatly increase the time and cost of litigation.

While the comparative fault doctrine continues irresistible in the abstract, implementing the new doctrine requires both great administrative expense and analytical and mathematical determination for which the judicial system is not equipped. It is now clear we have bred a horse which can be neither saddled nor raced. Rather, he runs wild awarding at whim.

Liability insurance dollars should be directed so far as possible to the maximal benefit of accident victims. A system of tort liability that greatly increases distribution costs, while allowing arbitrary results, is unfair both to the premium payer and to the accident victim. The inflated premium cost will mean that some people who would ordinarily insure will not, resulting in some accident victims receiving little or no compensation for their injury.

Because the majority of this court continue compounding the incomprehensible, we can only hope that the Legislature will reclaim its rightful role in determining basic issues of social policy. A first step would be reaffirmation of Code of Civil Procedure sections 875 and 876, dividing liability equally among responsible tortfeasors.

**MOSK, J.**—I dissent.

The majority take one more step toward the total infusion of negligence theories into the previously independent doctrine of products liability. As I feared when a narrow majority of the court strayed from principle in *Daly* v. *General Motors Corp.* (1978) 20 Cal.3d 725, 757 [144 Cal.Rptr. 380, 575 P.2d 1162], the "pure concept of products liability so pridefully fashioned and nurtured by this court for the past decade and a half is reduced to a shambles."

In *Daly* the manufacturer that launched the defective product into the stream of commerce was able to dilute its responsibility by placing in

issue the conduct of the plaintiff. Now the majority allow the manu-facturer additional dilution: to also place in issue the conduct of other defendants.

This trend can have no result other than to emasculate the doctrine of strict products liability. Indeed, in practice negligence and strict products liability are becoming virtually indistinguishable, a result long resisted by courts concerned with protection of consumers, and a result long sought by manufacturers and insurance carriers. In accomplishing that purpose this court has repudiated the lesson of Justice Traynor who, when he developed the new tort in *Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57, 63 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049], wrote that "[t]he purpose of such liability is to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market . . . ."

Bird, C. J., concurred.