**Patricia CONTI and Richard Conti**

**v.**

**FORD MOTOR COMPANY**

**v.**

**Richard CONTI, Third-Party Defendant.**

**Civ. A. No. 81–2158.**

United States District Court,
E.D. Pennsylvania.

Sept. 23, 1983.

Aaron D. Denker, Camden, N.J., for plaintiffs.

Joseph V. Pinto, for Ford Motor Co.

Albert J. Schell, Jr., Philadelphia, Pa., for Richard Conti, third-party defendant.

## MEMORANDUM AND ORDER

FULLAM, District Judge.

The wife-plaintiff, Patricia Conti, was seriously injured when, as she was in the process of entering, on the passenger side, a Ford automobile being driven by her husband, the plaintiff, Richard Conti, the vehicle suddenly and unexpectedly moved backward, throwing her to the ground. Contending that the accident was caused by a defective condition of the automobile, plaintiffs brought this action against the Ford Motor Company; the case went to trial solely on the issue of strict liability under § 402A Restatement (Second) Torts. The defendant caused a severance of the husband-plaintiff's claims, and joined him as a third-party defendant, on a negligence theory.

The automobile was equipped with a standard transmission, rather than an automatic transmission. In cars equipped with automatic transmissions, and also in standard-transmission cars manufactured by General Motors (and, until fairly recently, cars manufactured by Chrysler Corporation), it is impossible to start the engine while the transmission is engaged. But all Ford standard-transmission automobiles (as well as most foreign-make standard-transmission vehicles) lack a cutoff switch which would prevent activation of the starter while the clutch is engaged. If the starter is activated while the car is in gear, there are two possibilities: that the starter motor itself will cause the car to move; or, as occurred in this case, that activation of the

starter will also start the engine of the car, which will then propel the vehicle.

The Ford automobile involved in this case was owned by the plaintiffs, and was customarily operated by the wife-plaintiff. The husband-plaintiff more frequently drove a van which was equipped with automatic transmission. On the occasion in question, the husband-plaintiff was about to drive his wife to visit a sick relative. The car had been parked in the plaintiffs' driveway, with the gear shift lever in reverse. As wife-plaintiff was entering the car, husband-plaintiff turned the ignition key to start the engine, but neglected to depress the clutch. The engine started, moving the car suddenly backward some five or six feet, at which point husband-plaintiff succeeded in stopping the vehicle; unfortunately, the movement caused serious injuries to wife-plaintiff.

Plaintiffs presented the jury with two possible bases for imposing § 402A liability upon Ford Motor Company: (1) that the vehicle was defective and unreasonably dangerous in its design, because of the absence of a cutoff device which would have made it impossible to start the engine while the car was in gear, unless the clutch were depressed; and (2) that the defendant failed adequately to warn users of the dangers involved in attempting to start the engine with the car in gear. The jury's answers to special interrogatories imposed liability only on the failure-to-warn theory. The defendant's post-trial motions now before the court seek, *inter alia*, judgment n.o.v. on the ground that, as a matter of law, the warnings were adequate, and, in any event, any deficiency in the warnings was not a proximate cause of the accident.

The operator's manual provided by the manufacturer is a lengthy and detailed booklet. It contains approximately 81 warnings and cautions, in bold-face print, concerning various features of the vehicle. None of these warnings relate to the characteristic involved in this accident. The only relevant entry appears at pages 122–23 of the manual, in an inconspicuous portion of the text, and reads as follows:

"On manual transmission vehicles, depress the clutch pedal and place the gear shift lever in the neutral position, as starter will operate while selector is in any gear."

It should be noted that this instruction concerning the proper method of starting the car does not, except perhaps by implication, alert the reader to the dangers involved if the start-up instructions are not precisely followed. It should also be noted that, elsewhere in the manual, the operator is warned not to rely exclusively upon the emergency brake when the vehicle is left unattended; instead, the operator is advised to park the car with the gear shift lever in reverse.

In my view, the evidence clearly sufficed to permit the jury to conclude that the warnings given by the defendant were inadequate. It is significant that, in addition to answering the special interrogatories, the jury added the following comment:

"We, the members of the jury, sincerely recommend that Ford Motor Company should install inside the cab of their cars warnings and/or cautions stressing the possible dangers of not following the operator's instructions exactly. Also, it should put more warnings and/or cautions in the operator's manual."

The evidence was also clearly sufficient to support the jury's finding that the absence of adequate warnings was a proximate cause of the accident. The husband-plaintiff did testify that he had read the operator's manual, and was generally aware that he should have depressed the clutch before attempting to start the engine of a stick-shift car; but, until this accident, he was totally unaware of the possibility that the engine would start and propel the car in such circumstances. In its entirety, the husband's testimony leads one to conclude that he was guilty of momentary inadvertence, either in forgetting that the car had a stick-shift, or in overlooking the necessity of depressing the clutch before turning the ignition key. It was not unreasonable for the jury to conclude that the accident would not have oc-

curred if the manufacturer had provided warnings adequate to alert the operator to the dangers involved. While it is probably true that most persons familiar with stick-shift automobiles are aware that such vehicles can be caused to move by activating the starter alone, it cannot be ruled as a matter of law that all operators are chargeable with knowledge that the motor will start under such circumstances, and "really" move the vehicle rapidly and substantially. Moreover, there was evidence to the effect that approximately 90% of all automobiles on America's highways today are equipped with automatic transmissions. The jury might well have concluded that it was inappropriate for the manufacturer to assume widespread familiarity with stick-shift transmissions. The husband-plaintiff was not, under the evidence, consciously testing a known danger, nor was his momentary inadvertence unforeseeable, so as to constitute superseding negligence. The jury's finding of proximate cause cannot properly be disturbed.

■ I have considered the various contentions urged in support of a new trial, but have concluded that the issues were fairly and properly presented to the jury, whose decision must stand. I perceive no error in permitting the jury to view a filmed re-enactment of the start-up of the vehicle; this was merely helpful demonstrative evidence, and the differences between the re-enactment and the actual accident were clearly and repeatedly explained. If the jury accepted the testimony of plaintiffs and their medical witnesses, as the jury obviously did, the verdict was not notably excessive. The evidence tended to establish that, as a result of her injuries, the wife-plaintiff suffered a neurogenic bladder, resulting in complete and permanent loss of urinary control, necessitating self-catheterization six or seven times per day and night, for the rest of her life. The jury's award of $650,000 was perhaps generous, but not so excessive as to warrant judicial intervention.

■ A principal thrust of defendant's post-trial motions and, in my view, the only substantial issue remaining in this case, relates to the possible application of Pennsylvania's comparative negligence statute and/or the statute providing for contribution among joint tortfeasors. *See* 42 Pa. Cons.Stat.Ann. §§ 7102 (comparative negligence), 8324 (joint tortfeasors) (Purdon Supp.1982). As noted above, the liability of the defendant was predicated solely upon § 402A of the Restatement (Second) Torts, but defendant asserted a third-party complaint against the husband-plaintiff, alleging that he was negligent and that his negligence was a proximate cause of the accident and injury. Because of uncertainty concerning the applicability of the comparative negligence and joint tortfeasors statutes in the product-liability context, and in order to establish a factual predicate for a later determination of these issues, it was agreed by all concerned that the jury should be asked to determine the "percentage of causation" as between the defendant and the husband as third-party defendant. In addition to imposing 402A liability on the defendant, the jury further found that the husband was guilty of negligence, and that his negligence represented 75% of the cause of the accident; the jury assigned 25% of the causation to the defendant manufacturer. Shortly after the conclusion of the trial, I filed a brief Memorandum reflecting my tentative conclusion that the Pennsylvania Supreme Court would probably not invoke the comparative negligence doctrine in product-liability cases. Thus, judgment was entered in favor of both plaintiffs for the full amounts of the jury's awards, and judgment n.o.v. was entered in favor of the husband on the third-party complaint. The defendant's motions now seek reconsideration of the comparative negligence issue, and assert, alternatively, that contribution should be permitted.

The defendant correctly argues that the comparative negligence doctrine is now invoked in product-liability cases in many jurisdictions. See, *e.g., Brinkerhoff v. Swearingen Aviation Corp.,* 663 P.2d 937 (Alaska 1983); *Duncan v. Cessna Aircraft Co.,*

No. C–1443 (Tex. July 13, 1983). See also *Pan-Alaska Fisheries, Inc. v. Marine Construction & Design Co.*, 565 F.2d 1129 (9th Cir.1979) (federal admiralty jurisdiction); *Safeway Stores, Inc. v. Nest-Kart*, 21 Cal.3d 322, 579 P.2d 441, 146 Cal.Rptr. 550 (1978); *West v. Caterpillar Tractor, Inc.*, 336 So.2d 80 (Fla.1976); *Kaneko v. Hilo Coast Processing*, 654 P.2d 343 (Haw. 1982); *Dippel v. Sciano*, 37 Wis.2d 443, 155 N.W.2d 55 (1967). It is fair to state, however, that most of these decisions derive from the premise that strict product-liability is akin to "negligence *per se*" or some similar form of "fault". Some courts have based such decisions on the conclusion that such "fault" is within the reach of the comparative negligence statute enacted by the legislature, while other courts, recognizing that the statute does not apply, reach the same result by a judicially created analogous rule.

The principal authority relied upon by the defendant is the decision of our Court of Appeals in *Murray v. Fairbanks Morse*, 610 F.2d 149 (3d Cir.1979). In a comprehensive and scholarly opinion by Judge Rosenn, the court there held that the Virgin Islands comparative negligence statute was properly applicable to products-liability cases under the law of the Virgin Islands.[1] There are, however, several reasons which persuade me that the *Murray* decision is not a reliable indicator of the direction of the likely development of Pennsylvania law.

In the first place, the *Murray* court was dealing with a different comparative negligence statute. The Virgin Islands statute specifically excepted from its operation cases involving absolute liability. *See* V.I. Code Ann. Tit. 5, § 1451(b) (Supp.1982). The Third Circuit was able to conclude from this that the legislature did not intend to remove from the statute's operation cases involving mere strict liability, as opposed to absolute liability. The Pennsylvania comparative negligence statute, on the other hand, contains no exceptions clause, and simply does not lend itself to the same kind of analysis. *See* 42 Pa.Cons.Stat.Ann. § 7102 (Purdon Supp.1982).

There are, however, factors common to both the Virgin Islands and Pennsylvania, and, indeed, to most jurisdictions, which tend to support defendant's argument that the *Murray* holding should be equally applicable under Pennsylvania law. In both jurisdictions, when strict product-liability under § 402A was first incorporated into the law of that jurisdiction, contributory negligence was an absolute bar to recovery in negligence actions. It was made clear that, under § 402A, contributory negligence of the user of the product would not prevent recovery on strict-liability grounds. Thereafter, the contributory negligence doctrine was legislatively moderated by enactment of a comparative negligence statute. The question became, and remains, whether this change in the law of contributory negligence justifies re-examination of the question whether contributory negligence should now be partially re-admitted as a defense in product-liability cases.

In diversity cases such as this one, the role of a federal court is to predict the answer which would be given by the Pennsylvania Supreme Court to these questions. Would the Pennsylvania Supreme Court construe the Pennsylvania comparative negligence statute as applicable in the products liability context? If not, would the Pennsylvania Supreme Court consider the comparative negligence statute a sufficient justification for formulating and applying an analogous modification of § 402A law? It must be remembered that a federal appellate court has a somewhat greater role in the developing law of the Virgin

---

**1.** Initially, the defendant also cited the opinion of a panel of the Pennsylvania Superior Court in *Dambacher v. Mallis*, No. 1725/82 (Pa.Super.Ct. June 17, 1983), which seemingly upheld a lower court decision awarding contribution in a products-liability case on the basis of the Pennsylvania comparative negligence statute. That opinion has since been effectively withdrawn, by the grant of reargument on August 23, 1983. Moreover, it is not at all clear that the panel had actually focused upon the issues under discussion in the present case.

Islands than in the developing law of Pennsylvania. The *Murray* decision makes it quite clear that the Third Circuit Court of Appeals views comparative fault· as the preferable rule in product-liability cases, but this court is not free to follow that lead if it represents a departure from the discernible trend of Pennsylvania decisions.

Like the Virgin Islands statute, the Pennsylvania Comparative Negligence Act applies only in "actions brought to recover damages for *negligence....*" 42 Pa.Cons. Stat.Ann. § 7102(a) (Purdon Supp.1982). The two statutes differ, as mentioned above, in the fact that the Virgin Islands statute contains a section stating that the statute "does not apply to any action based upon a statute the violation of which imposes absolute liability, whether or not such statute comprehends negligent conduct." V.I.Code Ann. Tit. 5, § 1451(b) (Supp.1982). And the Pennsylvania statute is more explicit in stating that what is to be compared is the "causal *negligence*" of the parties. 42 Pa.Cons.Stat.Ann. § 7102(a) (Purdon Supp.1982). The Pennsylvania Supreme Court, perhaps more than any other state appellate court in the nation, has been emphatic in divorcing negligence concepts from product-liability doctrine. *See, e.g., Berkebile v. Brantly Helicoptor Corp.,* 462 Pa. 83, 337 A.2d 893 (1975); *Azzarello v. Black Brothers Co., Inc.,* 480 Pa. 547, 391 A.2d 1020 (1978). As the Court of Appeals has noted,

> "We read *Azzarello* as a signal that evidence and jury instructions regarding negligence concepts should be ·kept out of cases brought under § 402A." *Holloway v. J.B. Systems, Ltd.,* 609 F.2d 1069, 1973 (3d Cir.1979) (footnote omitted).

In my view, it is extremely unlikely that the Pennsylvania Supreme Court would hold that the comparative negligence statute directly governs product liability cases; that is, I believe it unlikely that, given *Azzarello,* that court would hold that the liability of a manufacturer for a defective product is equivalent to "causal negligence" which is to be apportioned under the statute.

It is nevertheless perhaps arguable that the Pennsylvania Supreme Court might yet conclude that passage of the Comparative Negligence Act justifies modification of the established rule that contributory negligence (as distinguished from voluntary assumption of the risk) is irrelevant in product-liability cases.· On that issue, the sign posts are, arguably at least, less legible. In *Rutter v. Northeastern Beaver County School District,* 496 Pa. 590, 437 A.2d 1198 (1981), the Pennsylvania Supreme Court voted 4 to 3 to reverse a lower court decision which had granted a compulsory nonsuit on the ground of voluntary assumption of the risk. Three of the four justices joined in an opinion which would have totally abolished the doctrine of assumption of risk in Pennsylvania as counter-productive and unnecessary in view of the enactment of the Comparative Negligence Act, while retaining the doctrine of assumption of risk in product-liability cases under § 402A. A fourth justice concurred in the result, but did not join in the plurality opinion. Of the dissenting justices, one found it unnecessary to reach the assumption-of-risk issue, another believed the doctrine should be retained in all cases, and the third dissenter joined in both of the other dissenting opinions.

While the ultimate fate of the assumption-of-risk doctrine in Pennsylvania is not of present concern, the *Rutter* case is important to the present decision: It is clear that at least three, and perhaps a majority, of the members of the Pennsylvania Supreme Court hold the view that the comparative negligence statute satisfactorily answers all questions of relative fault in negligence cases; but they would retain the assumption-of-risk doctrine in § 402A cases. In my view, this constitutes a strong signal that the court would not apply comparative fault or its equivalent in product-liability cases.

■ At the very least, I am satisfied that a judicially imposed doctrine of comparative fault (or comparative degree of causation) in product-liability cases would represent a significant departure from the

present law of Pennsylvania, not within the province of a federal court exercising diversity jurisdiction.

Finally, and quite apart from the restrictions imposed by this court's merely predictive role, I note that it is far from clear that the *Murray* decision would require the result sought by defendant in this case. In *Murray,* and in most if not all of the cases applying comparative fault or comparative causation in product-liability cases, the courts were dealing with what might be termed independent or additional negligence on the part of the user of the defective product; that is, negligence other than mere failure to learn of, and guard against, the defect alleged. In *Murray,* for example, there was evidence that the plaintiff was pursuing a dangerous method of installing the equipment in question, and was not exercising reasonable care for his own safety, in ways totally unrelated to the inadequate welds which rendered the product defectively dangerous. Notwithstanding the generality of the language in the *Murray* opinion, it is reasonable to suppose that the court might reach a different conclusion in a case, for example, where the operator of a vehicle is traveling at grossly excessive speeds when the wheel falls off, than in a case in which the operator merely was negligent in failing to inspect the wheel and observe that its fastenings were inadequate. And the concurrent negligence of a third party, such as an employer who fails to supply guarding omitted by the manufacturer, falls more comfortably within the comparative-fault realm than the negligence of a user of the product, when his negligence consists of failure to discover the defect or to avoid the harm. Invocation of the comparative-fault doctrine in the latter situation would severely undermine the policies served by § 402A strict liability.

For all of these reasons, I have concluded that comparative-fault doctrine has no place in this litigation. For the same reasons, and also because the strict liability of the manufacturer is not on the same legal plane as the negligence of the user,

*see Rhoads v. Ford Motor Co.,* 374 F.Supp. 1317, 1320 (W.D.Pa.1974), *aff'd on other grounds,* 514 F.2d 931 (3d Cir.1975), the Joint Tortfeasors Act is inapplicable here.

I therefore conclude that judgment was properly entered in favor of both plaintiffs in the full amounts awarded them by the jury, and that judgment was properly entered against the manufacturer on its third-party claim. In view of these conclusions, it is unnecessary to consider whether the jury's assessment of relative causation finds adequate support in the evidentiary record.