103 Cal.Rptr.2d 895 (2001)
86 Cal.App.4th 1135
EXPRESSIONS AT RANCHO NIGUEL ASSOCIATION, Plaintiff and Respondent,
v.
AHMANSON DEVELOPMENTS, INC., Defendant, Cross-complainant and Respondent;
Monier, Inc., Cross-defendant and Appellant.
No. D036419.
Court of Appeal, Fourth District, Division One.
February 5, 2001.
*897 Gordon & Rees, William J. Peters; William A. Robles Law Offices, Robles & Castles and William Anthony Robles, San Francisco, for Cross-Defendant and Appellant.
Grady & Dicks and Michael D. Dicks, San Diego, for Plaintiff and Respondent Expressions at Rancho Niguel Association.
Green & Adams, Philip W. Green and Gary D. Grant, Irvine, for Defendant, Cross-complainant and Respondent Ahmanson Developments, Inc.
*896 McINTYRE, J.
Where a defendant who is strictly liable for a plaintiffs injury settles with the plaintiff and with various other joint tortfeasors and then pursues an equitable indemnity claim against a nonsettling joint tortfeasor, is the nonsettlor jointly and severally liable for the amount paid by the defendant to the plaintiff? In this case we answer this question in the negative, based on the conclusion that joint and several liability principles do not apply in apportioning losses from an indivisible injury among joint tortfeasors, and reverse the judgment of the trial court.

FACTUAL AND PROCEDURAL BACKGROUND
Expressions at Rancho Niguel Association (the Association), the homeowners association for a 266-unit residential project in Laguna Niguel, filed a construction defect action against the owner of the project (Ahmanson Developments, Inc.), the developer of the project (McKellar Communities/McKellar Development of La Jolla) and various others. The Association alleged a broad spectrum of defects at the project, including roof leaks resulting from inadequate flashing, membrane application and substructure. Ahmanson filed a cross-complaint for indemnity against a number of project subcontractors, including Monier, Inc., which manufactured the roof tiles used at the project.
The Association's cost of repair expert, California Building & Consulting, Inc., prepared a report estimating the total cost of repair for all of the deficiencies claimed by the Association at over $15 million, including roofing repair costs of $2,258,150. McKellar's cost of repair expert, Melhorn Construction Consulting, estimated that the total cost of repair was less than $4 million, which included $264,783 in roofing repair costs.
Ahmanson and McKellar entered into a settlement with the Association for $3,131,750, of which McKellar paid $2.45 million and Ahmanson paid $681,750, plus an assignment of proceeds of settlements Ahmanson and McKellar reached with various subcontractors. McKellar assigned its claims against the remaining subcontractors to Ahmanson and the Association (collectively, the respondents), which agreed to pursue jointly claims against the remaining subcontractors and design professionals involved in the project. In connection with the settlement, the parties allocated 10.2 percent of the settlement proceeds to roofing damages.
The respondents thereafter entered into settlements with all of the remaining project subcontractors except Monier. They received $154,577 in settlement funds from the other roofing subcontractors on the project.
The respondents' indemnity claims against Monier proceeded to a bench trial. Monier argued that the respondents were entitled to recover only that portion of the amount paid to the Association for roofing damages that were attributable to its work. The respondents, on the other hand, argued that Monier was jointly and severally liable to them for all of the roofing damages and, in accordance with Code of Civil Procedure section 877, subdivision (a), it was required to pay the full amount of the settlement proceeds allocated to *898 roofing damages, offset by payments received from the other roofing subcontractors.
The court agreed with the respondents' argument that Monier's liability for the roofing damages was joint and several. It found that $343,553 of Ahmanson's and McKellar's settlement with the Association reflected roofing damages and that Monier was liable for this amount less the $154,577 paid by the other roofing subcontractors. It thus awarded the respondents $188,976 plus costs and attorney fees. Monier appeals.

DISCUSSION

1. Introduction

A. Joint and Several Liability Principles
Under the law, a tortfeasor generally is liable for all damages proximately caused by his tortious conduct. (See Civ. Code, § 1714.) Where multiple tortfeasors are responsible for an indivisible injury suffered by the plaintiff, each tortfeasor is jointly and severally liable to the plaintiff for those damages and thus may be held individually liable to the injured plaintiff for the entirety of such damages. (American Motorcycle Assn. v. Superior Court (1978) 20 Cal.3d 578, 582, 586-587, 590, 146 Cal.Rptr. 182, 578 P.2d 899 (American Motorcycle ); DaFonte v. Up-Right, Inc. (1992) 2 Cal.4th 593, 600, 7 Cal.Rptr.2d 238, 828 P.2d 140; Wimberly v. Derby Cycle Corp. (1997) 56 Cal.App.4th 618, 633, 65 Cal.Rptr.2d 532.) Thus, the joint and several liability doctrine ensures that the injured party receives adequate compensation for its injuries, even if one or more of the responsible parties do not have the financial resources to pay for their share of the liability. (American Motorcycle, at pp. 588, 590, 146 Cal.Rptr. 182, 578 P.2d 899.) Under such circumstances, "fairness dictates that the `wronged party should not be deprived of his right to redress,' but that `[t]he wrongdoers should be left to work out between themselves any apportionment.'" (Id. at p. 590, 146 Cal.Rptr. 182, 578 P.2d 899, quoting Summers v. Tice (1948) 33 Cal.2d 80, 88, 199 P.2d 1.)

B. Equitable Indemnity
The right to indemnity flows from payment of a joint legal obligation on another's behalf. (Civ.Code, § 1432; Western Steamship Lines, Inc. v. San Pedro Peninsula Hospital (1994) 8 Cal.4th 100, 114, 32 Cal.Rptr.2d 263, 876 P.2d 1062.) The elements of a cause of action for indemnity are (1) a showing of fault on the part of the indemnitor and (2) resulting damages to the indemnitee for which the indemnitor is contractually or equitably responsible. (Gouvis Engineering v. Superior Court (1995) 37 Cal.App.4th 642, 646, 43 Cal.Rptr.2d 785.)
Equitable indemnity principles govern the allocation of loss or damages among multiple tortfeasors whose liability for the underlying injury is joint and several. (American Motorcycle, supra, 20 Cal.3d at pp. 583, 595, 597-598, 146 Cal. Rptr. 182, 578 P.2d 899; GEM Developers v. Hallcraft Homes of San Diego, Inc. (1989) Cal.App.3d 419, 426, 261 Cal. Rptr. 626.) Such principles are designed, generally, to do equity among defendants who are legally responsible for an indivisible injury by providing a basis on which liability for damage will be borne by each joint tortfeasor "`in direct proportion to [its] respective fault.'" (American Motorcycle, at pp. 583, 598, 146 Cal.Rptr. 182, 578 P.2d 899, quoting Li v. Yellow Cab Co. (1975) 13 Cal.3d 804, 813, 119 Cal.Rptr. 858, 532 P.2d 1226; see BAJI No. 12.69 [requiring the jury in an indemnity action to determine the percentage of fault of each person who contributed as a cause of the damages].) Under comparative indemnity principles, a full range of allocations is possible, from no indemnity to complete indemnity for the amounts paid by the indemnitee. (Standard Pacific of San Diego v. A.A. Baxter Corp. (1986) 176 Cal.App.3d 577, 587-588, 222 Cal.Rptr. 106.)

*899 2. Do Joint and Several Liability Principles Apply as Among Joint Tortfeasors?

In this case, the parties agree that the court made an implicit finding that the roofing damages constituted an indivisible injury; there is no challenge to that implied finding on appeal. Thus, pursuant to the principles set forth above, Monier would have been jointly and severally liable to the Association for roofing damages at the project. Once Ahmanson and McKellar paid money to settle the Association's claims for roofing damages, each of them was entitled to seek equitable indemnity from Monier.
The question presented on this appeal is whether Ahmanson and McKellar, as settling defendants who are strictly liable for the underlying damages, essentially step into the shoes of the Association and thus are entitled to recover all the amounts they paid for the Association's injuries from other joint tortfeasors whose negligence was a proximate cause of those injuries on a joint and several basis. The respondents each admit that there is no existing authority expressly addressing this point, but posit that American Motorcycle and its progeny support the conclusion that negligent tortfeasors are jointly and severally liable to another defendant whose liability is based on strict liability. They argue that the same policy considerations underlying joint and several liability should apply to protect a "blameless" defendant, whose liability for the indivisible injury is purely vicarious. However, existing case law supports a contrary conclusion.
For example, American Motorcycle held that equitable considerations, based on concepts of comparative fault, apply in allocating losses among joint tortfeasors. In American Motorcycle, the court was faced with the issue of how the recently implemented comparative negligence principles affected California's established common law equitable indemnity doctrine, which involved only the question of whether a loss should be completely shifted from one tortfeasor to another, rather than whether the loss should be shared between them. (American Motorcycle, supra, 20 Cal.3d at pp. 591-598, 146 Cal.Rptr. 182, 578 P.2d 899.) In reviewing the historical application of the existing equitable indemnity doctrine, the court determined that "[although California cases have steadfastly maintained that the [equitable indemnity] doctrine is founded on `equitable considerations' ..., the all-or-nothing aspect of the doctrine has precluded courts from reaching a just solution in the great majority of cases in which equity and fairness call for an apportionment of loss between the wrongdoers in proportion to their relative culpability, rather than the imposition of the entire loss upon one or the other tortfeasor." (Id. at p. 595, 146 Cal.Rptr. 182, 578 P.2d 899.) It also recognized that the courts had encountered difficulties in framing an appropriate test "for determining when the relative culpability of the [tortfeasors was] sufficiently disparate to warrant placing the entire loss on one party and completely absolving the other." (Id, at p. 594, 146 Cal.Rptr. 182, 578 P.2d 899.) Based in part on these considerations, the American Motorcycle court concluded that it was necessary to modify the equitable indemnity doctrine to permit a tortfeasor to obtain indemnity, on a comparative fault basis, from other concurrent tortfeasors. (Id. at p. 591, 146 Cal.Rptr. 182, 578 P.2d 899.)
Shortly after American Motorcycle, the Supreme Court confirmed that comparative fault principles also apply to apportion liability among tortfeasors where one or more of the responsible parties' liability arose in strict liability rather than negligence. (Safeway Stores, Inc. v. Nest-Kart (1978) 21 Cal.3d 322, 328, 146 Cal.Rptr. 550, 579 P.2d 441.) In doing so, the court expressly rejected the argument that comparative fault principles cannot be applied to a defendant whose liability arises in strict liability because there was "no logical basis ... for comparing the relative *900 `fault' of a negligent defendant with that of a defendant whose liability rests on the `no fault' concept of strict product liability." (Id. at p. 331, 146 Cal.Rptr. 550, 579 P.2d 441.) It observed that "even in cases in which one or more tortfeasors' liability rests on the principle of strict liability, fairness and other tort policies, such as deterrence of dangerous conduct or encouragement of accident-reducing behavior, frequently call for an apportionment of liability among multiple tortfeasors." (Id. at p. 330, 146 Cal.Rptr. 550, 579 P.2d 441.) Although Safeway Stores left open the issue of whether comparative indemnity principles applied to apportion liability where all of the concurrent tortfeasors' liability arose in strict liability (see id. at pp. 326, fn. 1, 332, fn. 5, 146 Cal.Rptr. 550, 579 P.2d 441), there is no question regarding its holding that the application of comparative fault principles is not limited to cases involving negligent tortfeasors. (Id, at p. 328, 146 Cal.Rptr. 550, 579 P.2d 441; Daly v. General Motors Corp. (1978) 20 Cal.3d 725, 737-739, 144 Cal.Rptr. 380, 575 P.2d 1162.) As the Supreme Court has more recently observed, "[p]ast California cases have made it clear that the `comparative fault' doctrine is a flexible, commonsense concept, under which a jury properly may consider and evaluate the relative responsibility of various parties for an injury (whether their responsibility for the injury rests on negligence, strict liability, or other theories of responsibility), in order to arrive at an `equitable apportionment or allocation of loss.'" (Knight v. Jewett (1992) 3 Cal.4th 296, 313-314, 11 Cal.Rptr.2d 2, 834 P.2d 696.)
The respondents offer this court's decision in GEM Developers v. Hallcraft Homes of San Diego, Inc., supra, 213 Cal. App.3d 419, 261 Cal.Rptr. 626, as authority for the proposition that they may seek and recover from Monier, on a joint and several liability basis, the entirety of unreimbursed roofing damages. They rely on language in GEM Developers suggesting that a defendant claiming equitable indemnity against another joint tortfeasor is entitled to "seek apportionment of the loss on any theory that was available to the plaintiff upon which the plaintiff would have been successful." (GEM Developers v. Hallcraft Homes of San Diego, Inc., supra, 213 Cal.App.3d at p. 430, 261 Cal. Rptr. 626.) However, GEM Developers expressly recognizes that different policies underlie the joint and several liability doctrine, on one hand, and equitable indemnity or comparative fault principles, on the other, and that the purpose of the equitable indemnity doctrine is to apportion losses among joint tortfeasors in proportion to their relative culpability. In light of this express recognition, we do not read the cited language as purporting to change the law on how loss should be apportioned among tortfeasors, but instead as recognizing that a defendant who is strictly liable to the plaintiff is a joint tortfeasor for the purposes of applying equitable indemnity principles. GEM Developers does not contradict existing cases establishing that equitable indemnity, rather than joint and several liability, principles apply in apportioning losses among joint tortfeasors in the circumstances presented in this case. (Id. at p. 426, 261 Cal.Rptr. 626; Gentry Construction Co. v. Superior Court (1989) 212 Cal.App.3d 177, 181-182, 260 Cal.Rptr. 421.)
The respondents also argue that joint and several liability principles rather than the concept of comparative fault should apply in this context to promote settlement. Although we recognize that the application of joint and several liability principles as the respondents suggest would create an additional incentive for joint tortfeasors to settle rather than run the risk of being held liable for the entirety of the amounts paid by a settling defendant to the plaintiff (see generally Bobrow/Thomas & Associates v. Superior Court (1996) 50 Cal.App.4th 1654, 1661-1662, 58 Cal.Rptr.2d 626; American Motorcycle, supra, 20 Cal.3d at p. 604, 146 Cal.Rptr. 182, 578 P.2d 899), this does not justify a deviation from well-established *901 authorities holding that equitable indemnity principles, based on comparative fault, apply in apportioning damages from an indivisible injury among joint tortfeasors.
Perhaps based on the absence of any authority applying joint and several liability principles to apportion losses among joint tortfeasors, the respondents also argue that, as a matter of law, a strictly liable defendant is entitled to recover full indemnity from a joint tortfeasor whose negligence is a proximate cause of the underlying injuries. However, although a strictly liable defendant may certainly recover full indemnity from a negligent joint tortfeasor in appropriate circumstances, it is not true that the application of equitable indemnity principles always requires such a result. (Safeway Stores, Inc. v. Nest-Kart, supra, 21 Cal.3d at p. 330, 146 Cal. Rptr. 550, 579 P.2d 441.)
As the Supreme Court has observed "even when it is clear ... that the [defendant seeking indemnity is] vicariously or derivatively liable for the acts of the settling defendant, that factor alone still provides no assurance that a total shifting of loss is warranted under equitable indemnity principles. To begin with, there are many instances in which a defendant who is vicariously liable for another's acts may also bear some direct responsibility for an accident, either on the basis of its own actionfor example, the negligent hiring of an agentor of its own inactionfor example, the failure to provide adequate supervision of the agent's work. In addition, even when a nonsettling tortfeasor's liability may be wholly vicarious or derivative in nature, it does not invariably follow that equitable considerations will, as a matter of law, always call for the total shifting of loss to the more directly culpable tortfeasor." (Far West Financial Corp. v. D & S Co. (1988) 46 Cal.3d 796, 812, 251 Cal.Rptr. 202, 760 P.2d 399.) In any event, it is clear that the trial court in this case based its decision on the determination that Monier was jointly and severally liable for the amounts paid to the Association for roofing damages rather than relying on equitable indemnity principles. For the reasons set forth above, we conclude this was error.

DISPOSITION
The judgment is reversed and the matter is remanded for further proceedings not inconsistent with this opinion. Monier is to recover its costs of appeal.
HUFFMAN, Acting P.J., and NARES, J., concur.