Filed 12/13/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JAMES WONG, as Personal Representative, etc., et al., <br><br>     Plaintiffs and Respondents, <br><br> v. <br><br> AARON WONG, as Personal Representative, etc., et al., <br><br>     Defendants and Appellants. | A154286 <br><br> (San Mateo County <br> Super. Ct. No. 17CIV05074) |

    Defendants Aaron Wong and Tianqi Liu, as personal representatives of the Estate of Sylvia Tang and co-trustees of the Sylvia Tang Trust (collectively, the Tang Estate), appeal from a trial court order denying a special motion to strike under California's anti-SLAPP statute, Code of Civil Procedure section 425.16.[1]  The Tang Estate brought the motion after plaintiffs James Wong and Irene Wong, as personal representatives of the estate of Alan Wong (collectively, the Wong Estate), sued under a contractual agreement to be indemnified for the costs the Wong Estate incurred in defending against a separate lawsuit brought by a company the Tang Estate controls.  The Tang Estate claims the court erred by concluding that the instant case does not arise from its protected activity of litigating the other lawsuit.  We disagree and affirm.

---

[1] SLAPP is an acronym for " 'strategic lawsuit against public participation.' " (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 85 (*Navellier*).)  All further statutory references are to the Code of Civil Procedure.

1

# I.
## FACTUAL AND PROCEDURAL
## BACKGROUND

Sylvia Tang (Tang) and Alan Chung Cheung Wong (Wong) married in 1999 and divorced in 2011. During their marriage, Wong held a 48.5 percent interest and Tang held an 11 percent interest in Asian Square Inc. (Asian Square), which owns and operates Grand Century Mall in San Jose. On December 31, 2011, Tang and Wong entered a marital settlement agreement (settlement agreement) that resolved several disputes, including the division of assets and debts. The couple's divorce judgment, which was based on the settlement agreement, was filed on May 17, 2013, and entered nunc pro tunc as of December 31, 2011.

The settlement agreement contains two indemnity provisions. First, section 1.7 provides that "as and for an equalizing payment," Wong will transfer to Tang "100% of his 48.5% interest in Asian Square . . . , subject to all liabilities attendant thereto, for which [Tang] shall assume sole and separate responsibility and shall indemnify and hold [Wong] harmless from any liabilities attendant thereto." Second, section 2.1 provides, "If either party has incurred or does incur, on or before the effective date of this agreement, any liability not disclosed and listed in this agreement on which the other is or may become personally liable or that could be enforced at any time against an asset held or to be received under this agreement by the other party, that warrantor will fully indemnify the other with respect to the obligation, including, but not limited to, any and all liability on the obligation, attorney fees, and related costs."

Wong died in June 2013, and Tang died that August. Wong did not transfer his Asian Square shares to Tang before his death, but the Tang Estate successfully sought an order in probate court to effect the transfer.[2] Thus, the Tang Estate now held a 59.5 percent interest in Asian Square.

---

[2] The Tang Estate's request for judicial notice of the filings in the probate case, San Mateo Superior Court Case No. PRO124194, is granted.

2

In February 2014, Asian Square received a "Notice of Default and Election to Sell Under Deed of Trust" in connection with a deed of trust recorded against Asian Square's real property. The underlying promissory note was executed in 2009, and it involved a $5 million loan with United Commercial Bank (UCB) as the lender and Asian Square as the borrower. Upon receiving the notice of default, Asian Square promptly paid off the loan.

A few months later, in June 2014, Asian Square sued the Wong Estate in San Mateo Superior Court Case No. CIV529052 (the Asian Square litigation) to recoup the $5 million paid. In its complaint, Asian Square alleged that "[t]he $5 million proceeds of the UCB loan [were] appropriated, in full, by [Wong] for his own personal benefit and/or the benefit of his Trust, and with absolutely no benefit to Asian Square." Three years later, the Wong Estate obtained a judgment in its favor after the trial court sustained without leave to amend its demurrer to Asian Square's complaint. Asian Square appealed, and Division Four of this court recently reversed the judgment and remanded for further proceedings. (*Asian Square, Inc. v. Wong* (May 29, 2019, A152308) [nonpub. opn.].)

Meanwhile, the Wong Estate demanded indemnity from the Tang Estate for the costs it incurred in the Asian Square litigation, and the Tang Estate refused. In November 2017, the Wong Estate filed this lawsuit against the Tang Estate, alleging claims for breach of contract, express contractual indemnity, and equitable indemnity. The complaint seeks to enforce the settlement agreement by requiring the Tang Estate to indemnify the Wong Estate for the latter's costs and liabilities in the Asian Square litigation.

The Tang Estate responded by filing an anti-SLAPP motion to strike the complaint. The Tang Estate asserted that as holder of the controlling interest in Asian Square, it directed and funded the Asian Square litigation, which constituted protected petitioning activity on which the Wong Estate's three causes of action were based. The Wong Estate opposed, contending the Tang Estate's filing of the Asian Square litigation, while concededly protected activity, was not the basis for this lawsuit. It argued that

instead, the activity forming the basis of this suit was "the Tang [Estate's] breach of the [settlement agreement] by refusing to honor its broad indemnity obligation."

After taking judicial notice of the superior court records in the divorce case and the Asian Square litigation, the trial court agreed with the Wong Estate and denied the anti-SLAPP motion. The court held that this lawsuit does not arise from protected activity, explaining that the Wong Estate is "not suing [the Tang Estate] because [the Tang Estate] (or an aligned party) filed a lawsuit. [The Wong Estate is] suing [the Tang Estate] because [it] incurred legal fees defending an action in which the complaining party (Asian Square) sought to hold [the Wong Estate] responsible for alleged liabilities of Asian Square incurred as a result of [Wong's] alleged misappropriation of funds for his personal benefit." (Italics omitted.) As a result of this conclusion, the court did not reach the issue whether the Wong Estate's claims had merit.

## II.
## DISCUSSION

### A.    *General Legal Standards.*

The anti-SLAPP statute allows a defendant to move to dismiss "certain unmeritorious claims that are brought to thwart constitutionally protected speech or petitioning activity." (*Robinzine v. Vicory* (2006) 143 Cal.App.4th 1416, 1420–1421.) The heart of the statute states: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

"Anti-SLAPP motions are evaluated through a two-step process. Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged. [Citations.] If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least 'minimal merit.' " (*Park v. Board of Trustees of California State University* (2017)

4

2 Cal.5th 1057, 1061 (*Park*).) If the defendant cannot show that the challenged claims arise from its protected activity, or the plaintiff shows a probability of prevailing on the claims, then the anti-SLAPP motion must be denied.

We review de novo an order granting or denying an anti-SLAPP motion. (*Park*, *supra*, 2 Cal.5th at p. 1067.) Here, we are concerned only with the first step of the analysis, which requires us to "exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity." (*Ibid.*) In doing so, we consider both the pleadings and "affidavits concerning the facts upon which liability is based," and we "accept the plaintiff's submissions as true and consider only whether any contrary evidence from the defendant establishes its entitlement to prevail as a matter of law." (*Ibid.*)

B.     *The Challenged Claims Do Not "Arise From" the Tang Estate's Protected Activity of Pursuing the Asian Square Litigation.*

The Wong Estate does not dispute that the Tang Estate's "pursuit of the Asian Square lawsuit" is protected petitioning activity. (See § 425.16, subd. (e); *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056; *Ludwig v. Superior Court* (1995) 37 Cal.App.4th 8, 18.) Nor does it dispute that this activity is protected even though Asian Square, not the Tang Estate, was the named party in the other litigation. (See *Lennar Homes of California, Inc. v. Stephens* (2014) 232 Cal.App.4th 673, 680–681 (*Lennar Homes*).) Rather, the Wong Estate argues that the Tang Estate did not carry its burden to demonstrate that protected activity "underlies or forms the basis for" the challenged claims. (*Park*, *supra*, 2 Cal.5th at p. 1062.) We agree.

*Park* addressed the "requisite nexus between the claims an anti-SLAPP motion challenges and protected activity." (*Park*, *supra*, 2 Cal.5th at p. 1062, emphasis omitted.) The Supreme Court explained that "a claim is not subject to a motion to strike simply because it contests an action or decision that was arrived at following speech or petitioning activity, or that was thereafter communicated by means of speech or petitioning activity. Rather, a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step

5

leading to some different act for which liability is asserted." (*Id.* at p. 1060.) Thus, in evaluating anti-SLAPP motions, "courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Id.* at p. 1063.)

Here, the claims for breach of contract and express contractual indemnity are both premised on the Tang Estate's alleged breach of its obligation to indemnify the Wong Estate for liabilities involving Asian Square. (See *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821 [elements of breach of contract]; *Four Star Electric, Inc. v. F&H Construction* (1992) 7 Cal.App.4th 1375, 1380 [elements of express contractual indemnity].) Specifically, the first cause of action alleges the Tang Estate "has breached the [settlement agreement] by refusing, and continuing to refuse, to indemnify and hold [the Wong Estate] harmless relative to the Asian Square [litigation]," and the second cause of action alleges the Wong Estate has "demanded that [the Tang Estate] indemnify and hold [it] harmless with relation to the Asian Square [litigation], but [the Tang Estate] refused and continues to refuse." Similarly, the claim for equitable indemnity is premised on the Tang Estate's refusal to indemnify the Wong Estate, as the claim alleges the Tang Estate was "aware of but failed and refused to honor the indemnity provisions of the [settlement agreement] with respect to Asian Square." (See *Expressions at Rancho Niguel Assn. v. Ahmanson Developments, Inc.* (2001) 86 Cal.App.4th 1135, 1139 [elements of equitable indemnity].)

Although the Tang Estate agrees that the three causes of action against it are based on the alleged breach of its contractual indemnification obligation, it argues "that the activity triggering the indemnity duty and the breach was [its] instigation and funding of the Asian Square [l]itigation against the Wong Estate." We are not persuaded. It is insufficient for protected activity to be "a step leading to some different act for which liability is asserted"; it must "*itself* [be] the wrong complained of." (*Park, supra,* 2 Cal.5th at p. 1060.) In other words, "a cause of action can only be said to arise from protected conduct if it alleges at least one *wrongful* act—conduct allegedly *breaching a duty and thereby injuring the plaintiff*—that falls within [section 425.16's] definition of

6

protected conduct." (*Old Republic Construction Program Group v. The Boccardo Law Firm, Inc.* (2014) 230 Cal.App.4th 859, 869.) In contrast, " '[i]f the core injury-producing conduct upon which the plaintiff's claim is premised does not rest on protected speech or petitioning activity, collateral or incidental allusions to protected activity will not trigger application of the anti-SLAPP statute.' " (*Area 51 Productions, Inc. v. City of Alameda* (2018) 20 Cal.App.5th 581, 594.) The Tang Estate has not been sued for pursuing the Asian Square litigation but for breaching its obligation to indemnify the Wong Estate for expenses incurred in that litigation.[3]

The Tang Estate argues that not only its pursuit of the Asian Square litigation but also its "decision not to fund one side's litigation notwithstanding a purported obligation to do so" constitutes protected activity. The Tang Estate relies on *Lennar Homes*, which it characterizes as "directly on point." In that decision, the three defendants, a woman and a married couple, purchased homes from the plaintiff builder under contracts with indemnity clauses. (*Lennar Homes*, *supra*, 232 Cal.App.4th at pp. 677–678.) The woman and the husband, but not his wife, brought a federal class action against the builder, "alleg[ing] fraudulent nondisclosure and misrepresentation under a variety of legal theories." (*Ibid.*) The builder sued all three for express contractual indemnity, "seeking to recover attorney fees and costs expended defending the allegations brought in federal court by [the defendants], as well as the attorney fees and costs of the present action." (*Id.* at p. 678.) The defendants filed an anti-SLAPP motion, which the trial court granted, and the Fourth District Court of Appeal affirmed. (*Id.* at p. 677.)

In *Lennar Homes*, the primary issue under the first-prong analysis on appeal was whether the wife was on the same footing as her husband even though "she was not named as a plaintiff in the federal litigation," as the builder did not dispute that the

---

[3] Nor does the Tang Estate's causing of those expenses by pursuing the Asian Square litigation mean that the Wong Estate's suit for indemnity effectively seeks to hold the Tang Estate liable for litigation activity. (See, e.g., *Gaynor v. Bulen* (2018) 19 Cal.App.5th 864, 869, 880 [claim for breach of fiduciary duty arose from trustees' wrongful plan to retain control of trust, not litigation activity by which plan carried out].)

husband and the other woman had engaged in protected activity. (*Lennar Homes*, *supra*, 232 Cal.App.4th at p. 680.) In the course of concluding the federal litigation was "an act in furtherance of [the wife's] right of petition," the Court of Appeal stated, "[N]o matter how the claim [against the wife] is characterized, it is indisputable that [the builder's] claim is 'based on' the federal court litigation brought by [the husband]." (*Id.* at pp. 683–684, quoting *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.) It explained,

> "*Navellier* . . . is instructive. In that case, the plaintiffs filed suit in state court, alleging the defendant was liable for fraud and breach of contract for filing counterclaims in a federal action in breach of a contractual release. [Citation.] The dismissal of the state action on an anti-SLAPP motion was upheld . . . , in part because 'but for the federal law suit and [defendant's] alleged actions taken in connection with that litigation, plaintiffs' present claims would have no basis. This action therefore falls squarely within the ambit of the anti-SLAPP statute's "arising from" prong.' [Citation.] Similarly, here, but for the federal litigation brought in part on [the wife's] behalf, asserting claims that belong in part to her, [the builder's] state law claim against her would have no basis."

(*Lennar Homes*, at p. 684.) Thus, "all three defendants adequately showed that [the builder's] claim against them arises from protected activity." (*Id.* at pp. 684–685.)

We decline to follow *Lennar Homes* here. To begin with, *Lennar Homes* was decided before *Park* and did not employ *Park*'s elements-based analysis. The builder effectively conceded that the husband and the other woman had met their first-prong burden (*Lennar Homes*, *supra*, 232 Cal.App.4th at p. 680), and the Court of Appeal thus had little reason to re-examine whether the builder's claim did, indeed, arise from the federal litigation. (See *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1160 [" '[I]t is axiomatic that cases are not authority for propositions not considered' "].)

Moreover, as the Wong Estate points out, unlike the indemnity provisions in the settlement agreement here, the indemnity clauses at issue in *Lennar Homes* included a covenant not to sue. (*Lennar Homes*, *supra*, 232 Cal.App.4th at p. 678.) Thus, the builder's claim arguably *did* arise from the defendants' litigation activity in that the claim for express contractual indemnity was premised on violation of the covenant not to sue, not just the promise to indemnify the builder for nondisclosure-related liabilities more

generally. This distinction is supported by *Lennar Homes*'s reliance on *Navellier*, which also involved a situation where the protected litigation activity (the filing of counterclaims) itself constituted the breach of a contractual provision (the general release of claims). (See *Navellier*, *supra*, 29 Cal.4th at p. 90.)

In reaching its holding, *Navellier* stated that the plaintiffs' breach-of-contract claim arose from the defendant's filing of counterclaims in the federal lawsuit because, "*but for* the federal lawsuit and [the defendant's] alleged actions taken in connection with that litigation, plaintiffs' present claims would have no basis." (*Navellier*, *supra*, 29 Cal.4th at p. 90, italics added.) Echoing this language, the Tang Estate argues that this lawsuit arises from its protected activity "because 'but for' the Asian Square [l]itigation and [its] 'alleged actions taken in connection with that litigation,' the Wong Estate's 'present claims would have no basis.' " We agree that the Wong Estate's indemnification claims would not have a basis "but for" the Tang Estate's pursuit of the Asian Square litigation, in the sense the Wong Estate would not have incurred the expenses for which it seeks indemnity had that litigation not occurred. But we decline to read *Navellier* so broadly as to establish that a claim arises from protected activity any time that the claim would not have been brought had that activity not occurred. The holding the Tang Estate asks us to reach would mean that the first prong of the anti-SLAPP analysis is categorically satisfied every time an action seeks indemnification for litigation expenses, because those expenses can only be incurred in connection with litigation, a protected activity. Such a conclusion is irreconcilable with *Navellier*'s own statement that the fact "that a cause of action arguably may have been 'triggered' by protected activity does not entail that it is one arising from such" (*Navellier*, at p. 89), not to mention the Supreme Court's more recent emphasis on "the distinction between activities that form the basis for a claim and those that merely lead to the liability-creating activity." (*Park*, *supra*, 2 Cal.5th at p. 1064.)

In short, the Wong Estate's claims for indemnity do not arise from the Tang Estate's protected activity in relation to the Asian Square litigation. As a result, the trial

9

court properly denied the anti-SLAPP motion on the basis that the Tang Estate failed to carry its burden under the first prong of the analysis.

## III.
### DISPOSITION

The trial court's order denying the anti-SLAPP motion is affirmed. Respondents are awarded their costs on appeal.

_____

Humes, P.J.


WE CONCUR:



_____

Margulies, J.



_____

Sanchez, J.



*Wong et al. v. Wong et al.* A154286

11

Trial Court:

San Mateo County Superior Court


Trial Judge:

Hon. Susan Greenberg


Counsel for Defendant and Appellant:

Hopkins & Carley,  Allonn E. Levy, Steven P. Braccini, Ryan D. Cunningham

Sheppard, Mullin, Richter & Hampton, Karin D. Vogel, Steven P. Braccini, Valerie E. Alter


Counsel for Plaintiff and Respondent:

Parr Law Group,  Eric J. Sidebotham

Law offices of Russell J. Hanlon, Russell J. Hanlon

*Wong et al. v. Wong et al.*  A154286